1 | **BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
2 | 1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
3 | Telephone: (925) 300-4455
Facsimile: (925) 407-2700
4 | E-mail: ltfisher@bursor.com

5 | *Attorneys for Plaintiff*

6
7
8
9
10 | UNITED STATES DISTRICT COURT
11 | NORTHERN DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| ABRAHIM MAHALLATI, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| WIX.COM, INC., | |
| Defendant. | |

Plaintiff Abrahim Mahallati ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action Complaint against Defendant Wix.com, Inc. (hereinafter "Defendant" or "Wix") to seek redress for Defendant's practice of unilaterally modifying the terms of its agreement with customers and overcharging for its subscription services on behalf of a California class of consumers ("Class Members") within the applicable statute of limitations period.

2. In short, Defendant charges consumers for subscription services at a set agreed upon price, then unilaterally increases the price during the pendency of the subscription.

3. Defendant is engaged in the development, marketing, and sale of website subscription services that are accompanied by deceptive billing practices that are not disclosed at the time consumers sign up for services.

4. Consumers rely on the representations and advertisements of service providers to know which subscription services to purchase. These subscription services automatically bill them on a recurring basis.

5. When consumers sign up for services with a subscription retailer, they reasonably believe that they will be billed in a transparent manner.

6. Defendant profits from the sale of the subscriptions. If not for Defendant's deceptive billing practices, consumers would not have purchased or subscribed to said services, would have canceled their subscriptions, or would have chosen to purchase services from a competitor.

7. Defendant engages in early renewal and pre-payment-period billing practices, without notifying consumers or obtaining their consent.

8. Defendant misrepresents subscription pricing by increasing consumers' annual costs and overcharging for the subscription service, without disclosure, consent, or justification.

9. Defendant makes written representations to consumers that contradict the actual billing practices of the subscription services that will be used by Defendant after the consumer signs up for service.

10. The aforementioned written representations are objectively false and constitute false advertising under Cal. Bus. & Prof. Code §§ 17500 *et. seq.*, unlawful, unfair, and/or deceptive business practices under Cal. Bus. & Prof. Code §§ 17200 *et. seq.*, and further constitute violations of Cal. Bus. & Prof. Code §§ 17600 *et seq*.

11. Defendant's violations of the law include, but are not limited to, the false advertising, marketing, representations, and sale of the falsely advertised subscriptions to consumers in California.

12. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease advertising and selling the subscriptions in a manner that is deceptive, to disclose all automatic billing practices in a conspicuous manner at or prior to the point of sale, and an award of damages to the Class Members, together with costs and reasonable attorneys' fees.

## PARTIES

13. Plaintiff Abrahim Mahallati is a California citizen residing in San Francisco, California. Plaintiff first purchased Defendant's website subscription service in or around December 2021 for his personal website, in California. Plaintiff was recurringly charged by Defendant for renewal of his subscription in each of December 2022, December 2023 and December 2024.

14. Defendant Wix.com, Inc. is a Delaware corporation with its principal place of business located at 100 Gansevoort Street, New York, NY 10014.

15. Defendant is engaged in the development, marketing, and sale of website subscription services.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A)-(C) because this case is a class action where the aggregate claims of all members of

the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant.

17. This Court also has personal jurisdiction over Defendant because it conducts and transacts business in the state of California, including this District, such as entering into contracts website services within this District. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchases of the subscription services.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTUAL ALLEGATIONS

19. Defendant operates a website development platform, Wix.com, that allows users to create and host websites through a subscription-based service model. Defendant markets its platform to consumers seeking to establish an online presence, offering various subscription tiers with different features and pricing structures.

20. Defendant derives substantial revenue from recurring subscription fees charged to its users. To attract new subscribers, Defendant prominently advertises specific subscription prices and terms on its website and in marketing materials, inducing consumers to sign up based on these represented terms.

21. When consumers sign up for a subscription, they are presented with clearly stated pricing terms. Defendant's website displays the subscription price, billing frequency, and duration of the subscription plan the consumer selects. Consumers reasonably rely on these representations when deciding to purchase a subscription.

22. At the point of sale, Defendant presents consumers with a subscription agreement that purports to govern the terms of the transaction. Consumers agree to pay the stated price for the stated term in exchange for access to Defendant's platform and services.

23. After consumers have entered into subscription agreements with Defendant, Defendant unilaterally modifies the material terms of those agreements to its own benefit and to the detriment of its subscribers.

24. Specifically, Defendant increases renewal prices above the originally agreed rate without notice.

25. Defendant implements these changes without obtaining affirmative consent from affected subscribers.

26. Additionally, Defendant falsely represented to new customers that they could cancel their subscription at any time. However, contrary to these representations, Defendant only permits users to cancel a subscription within 14 days of the **first** time a user makes a purchase and does not apply to automatic subscription renewals.

27. Additionally, Defendant charges users for automatic renewals weeks **before** a new subscription period begins.

28. Thus, due to the combination of these policies, users are habitually charged for vastly more than what they agreed to pay with no real ability to cancel their account and receive a refund once they realize that Defendant unilaterally changed the terms of their agreement.

29. As a direct result of Defendant's conduct, Plaintiff and Class Members have been charged amounts exceeding what they agreed to pay when they subscribed to Defendant's services.

30. In or about December 2021, Plaintiff signed up for a website subscription service from Defendant.

31. The subscription service was to be charged to Plaintiff's credit card.

32. On December 27, 2021, Plaintiff paid $291.60 for the "Premium Plan Business Unlimited" for his personal website, for the billing period of December 27, 2021 through December 27, 2022.

33. At the time Plaintiff purchased this subscription, he received an email stating that his "subscription will automatically renew for USD324.0000 on Dec 13, 2022."

34. But this was not true. Rather, on December 13, 2022, Plaintiff experienced an early renewal charge of $384.00—a $60.00 price increase compared to what Plaintiff was told—for the billing period of December 27, 2022 through December 27, 2023.

35. Similarly, on December 13, 2024, Plaintiff experienced an early renewal charge of $432.00—a $140.40 price increase from Plaintiff's original subscription cost—for the billing period of December 27, 2024 through December 27, 2025.

36. Additionally, when Plaintiff first purchased a subscription, he was informed in writing that he could "disable auto-renewal or cancel [his] subscription at any time in [his] account settings."

37. But this was also highly misleading. In fact, contrary to Defendant's representations, users are only permitted to cancel with a refund within 14 days of the first time that user makes a purchase.

38. Thus, once Defendant charged Plaintiff more than its previous representations (which was also two weeks before the end of his subscription), Plaintiff had no ability to cancel his subscription with a refund.

39. Plaintiff never consented to or was notified of Defendant's deceptive billing practices.

## CLASS ALLEGATIONS

40. Plaintiff brings this action on behalf of himself and all other similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) defined as (collectively, the "Classes"):

> All consumers, who, between the applicable statute of limitations and the present, purchased one or more subscriptions in the State of California, and who were overcharged with respect to their original subscription without their authorization by Defendant.

41. The Classes do not include (1) Defendant, its officers, and/or its directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

42. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

43. ***Community of Interest***: There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

44. ***Numerosity***: While the exact number of members of the Class is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Class number in the millions. The precise number of the members of the Class and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Class may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

45. ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individuals of the Class. These common legal and factual questions include, but are not limited to:

(a) Whether Defendant engaged in unlawful, unfair, or deceptive business practices in selling subscriptions to Plaintiff and other Class Members;

(b) Whether Defendant made misrepresentations with respect to the subscriptions sold to consumers;

(c) Whether Defendant profited from the sale of the wrongly advertised subscription services;

(d) Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, and California Bus. & Prof. Code § 17600, *et seq.*

(e) Whether Plaintiff and Class Members are entitled to equitable and/or injunctive relief;

(f) Whether Defendant's unlawful, unfair, and/or deceptive practices harmed Plaintiff and Class Members; and

(g) The method of calculation and extent of damages for Plaintiff and Class Members.

46. ***Typicality***: The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff purchased Defendant's website subscription service and was exposed to Defendant's unlawful, unfair and/or fraudulent practices described herein, and suffered loss as a result of those practices.

47. ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Class because he has no interests adverse to the interests of the members of the Class. Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

48. ***Superiority***: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their claims other than through the procedure of a class action. In addition, even if Class Members could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presented fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws. If separate actions were brought by individual members of the Class, Defendant could be subject to inconsistent obligations.

**CAUSES OF ACTION**
**COUNT I**
**Violation of the California False Advertising Act**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***

49. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

50. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

51. Pursuant to California Business and Professions Code § 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ... [or] to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

52. California Business and Professions Code § 17500, *et seq.*'s prohibition against false advertising extends to the use of false or misleading written statements.

53. Defendant misled consumers by making misrepresentations and untrue statements about the subscription services, namely, Defendant represented to Plaintiff and Class Members that such services would be billed at one rate and then charged Plaintiff and Class Members a different rate that was more expensive.

54. Defendant knew that its representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions to deceive reasonable consumers like Plaintiff and other Class Members.

55. As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and the other Class Members have suffered injury in fact and have lost money or property, time, and attention. Plaintiff reasonably relied upon Defendant's representations regarding the cost of the subscription upon agreeing to it. In reasonable reliance on Defendant's false advertisements, Plaintiff and other Class Members purchased the subscriptions. In turn, Plaintiff and other Class

1    Members ended up with services that they were automatically overcharged for on a recurring basis,
2    and therefore Plaintiff and other Class Members have suffered injury in fact.
3        56.   Plaintiff alleges that these false and misleading representations made by Defendant
4    constitute a "scheme with the intent not to sell that personal property or those services, professional
5    or otherwise, so advertised at the price stated therein, or as so advertised."
6        57.   Thus, Defendant knowingly sold subscriptions to Plaintiff and other putative class
7    members under deceptive and misleading terms.
8        58.   The misleading and false advertising described herein presents a continuing threat to
9    Plaintiff and the Class Members in that Defendant persists and continues to engage in these
10   practices and will not cease doing so unless and until forced to do so by this Court. Defendant's
11   conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.
12   Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease its
13   false advertising, as well as disgorgement and restitution to Plaintiff and all Class Members
14   Defendant's revenues associated with their false advertising, or such portion of those revenues as
15   the Court may find equitable.
16       59.   Plaintiff has no adequate remedy at law for this claim. There is no commensurate
17   legal remedy for Plaintiff's requested relief under this count. Alternatively, legal remedies
18   available to Plaintiff are inadequate because they are not "equally prompt and certain and in other
19   ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937);
20   *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a
21   possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water
22   Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the
23   jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate,
24   and efficacious to the end in view … It must reach the whole mischief and secure the whole right
25   of the party in a perfect manner at the present time and not in the future"). Furthermore:
26       a)    To the extent damages are available here, damages are not equally certain as
27             restitution because the standard that governs restitution is different than the
28             standard that governs damages. Hence, the Court may award restitution

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                              9

      even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages;

  b) Damages and restitution are not necessarily the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Plaintiff seeks such relief here; and

  c) Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

60. Plaintiff also lacks an adequate remedy at law to prevent future harm.

## COUNT II
### Violation of Unfair Business Practices Act
### Cal. Bus. & Prof. Code §§ 17200 *et seq*.

61. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

62. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

63. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL.  Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices.  A plaintiff is to provide evidence of a causal connection between a defendant's business practices and the alleged harm-- that is, evidence that the defendant's conduct caused or was likely to cause substantial injury.  Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

64. California Business & Professions Code § 17200 prohibits any "unfair . . . business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiff reserves the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

65. To satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

66. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiff and members of the Class. Plaintiff and members of the Class have suffered injury in fact due to Defendant's decision to sell them falsely described subscription services and Defendant's repeated increasing of consumers' annual costs, overcharging consumers for their subscription service, without disclosure, consent, or justification. Thus, Defendant's conduct has caused substantial injury to Plaintiff and the members of the Class.

67. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiff and members of the Class that the subscriptions were set at the original price and thus would not cause subsequent unauthorized charges. But Defendant continually raised the price of the subscription service, while providing no additional benefit. Thus, the injury suffered by Plaintiff and the members of the Class is not outweighed by any countervailing benefits to consumers. Finally, the injury suffered by Plaintiff and members of the Class is not an injury that these consumers could reasonably have avoided. After Defendant falsely represented the subscriptions, Plaintiff and Class Members suffered injury in fact due to Defendant's sale of

1  subscriptions to them.  As such, Defendant took advantage of Defendant's position of perceived
2  power to deceive Plaintiff and the Class Members to purchase subscription services.  Therefore, the
3  injury suffered by Plaintiff and members of the Class is not an injury which these consumers could
4  reasonably have avoided.

5        68.    Thus, Defendant's conduct has violated the "unfair" prong of California Business &
6  Professions Code § 17200.

## FRAUDULENT

8        69.    California Business & Professions Code § 17200 prohibits any "fraudulent ...
9  business act or practice."  To prevail under the "fraudulent" prong of the UCL, a consumer must
10 allege that the fraudulent business practice was likely to deceive members of the public.  The test
11 for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the
12 public is likely to be deceived.  Unlike common law fraud, a § 17200 violation can be established
13 even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

14       70.    Here, not only were Plaintiff and the Class Members likely to be deceived, but these
15 consumers were actually deceived by Defendant.  Such deception is evidenced by the fact that
16 Plaintiff agreed to purchase yearly subscriptions under the basic assumption that they would be
17 charged the original purchase price.  Plaintiff's reliance upon Defendant's deceptive statements is
18 reasonable due to the unequal bargaining powers of Defendant and Plaintiff.  For the same reason,
19 it is likely that Defendant's fraudulent business practice would deceive other members of the
20 public.

21       71.    As explained above, Defendant deceived Plaintiff and other Class Members by
22 representing that the subscriptions would be renewed at the original purchase price on Defendant's
23 website, and thus falsely represented the subscription services.  Thus, Defendant's conduct has
24 violated the "fraudulent" prong of California Business & Professions Code § 17200.

## UNLAWFUL

26       72.    California Business & Professions Code § 17200, *et seq*. prohibits "any unlawful ...
27 business act or practice."

73. As explained above, Defendant deceived Plaintiff and other Class Members by increasing consumers' recurring subscription price.

74. Defendant used false advertising, marketing, and misrepresentations to induce Plaintiff and Class Members to purchase the subscriptions, in violation of California Business & Professions Code § 17500, *et seq*. Had Defendant not falsely advertised, marketed or misrepresented the subscriptions, Plaintiff and Class Members would not have purchased them. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiff and Class Members.

75. These representations by Defendant therefore constitute an "unlawful" business practice or act under California Business & Professions Code § 17200 *et seq*.

76. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to California Business & Professions Code § 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

77. Plaintiff has no adequate remedy at law for this claim. There is no commensurate legal remedy for Plaintiff's requested relief under this count. Alternatively, legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also U.S. v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("the 'mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief"); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future"). Furthermore:

    a) To the extent damages are available here, damages are not equally certain as restitution because the standard that governs restitution is different than the

        standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages;

    b)    Damages and restitution are not necessarily the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Plaintiff seeks such relief here; and

    c)    Legal claims for damages are not equally certain as restitution because claims under the UCL and unjust enrichment entail few elements.

78.    Plaintiff also lacks an adequate remedy at law to prevent future harm.

## COUNT III
### Violation of California Automatic Purchase Renewals Statute
### Cal. Business and Professions Code §§ 17600 *et seq*.

79.    Plaintiff incorporates by reference each allegation set forth above.  The California Automatic Purchase Renewals Statute makes it unlawful for any business that makes an automatic renewal offer or continuous service offer to a consumer in this state to do any of the following: "(1) [f]ail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled [...] (2) [c]harge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms… [...] (3) [f]ail to provide an acknowledgement that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer…" California Bus. & Prof. Code § 17602(a).

80. By failing to provide Plaintiff and Class Members with clear and conspicuous terms of its subscription services, increasing the recurring subscription charge, and continuing to charge consumers without their affirmative authorization, Defendant violated California Business & Professions Code § 17602(a)(l), (2), and (3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) An order certifying the Class and appointing Plaintiff as Representative of the Class;

(b) An order certifying the undersigned counsel as Class Counsel;

(c) An order requiring Defendant, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(d) An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

(e) Full restitution of all funds acquired from Plaintiff and Class Members from the sale of subscription services during the relevant class period;

(f) All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(g) Pre- and post-judgment interest; and

(h) All other relief, general or special, legal and equitable, to which Plaintiff and Class Members may be justly entitled as deemed by the Court.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  February 5, 2026        **BURSOR & FISHER, P.A**.

By:   */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A**.
Julian C. Diamond (*pro hac vice* forthcoming)
Spencer N. Migotsky (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jdiamond@bursor.com
        smigotsky@bursor.com

*Attorneys for Plaintiff*