KATHY HUANG (State Bar No. 240677)
RACHEL E. K. LOWE (State Bar No. 246361)
Email:  kathy.huang@alston.com
        rachel.lowe@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:   213-576-1000
Facsimile:   213-576-1100

TRACY YAO (State Bar No. 323816)
Email:  tracy.yao@alston.com
**ALSTON & BIRD LLP**
55 2nd Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001

Attorneys for Defendant WIX.COM, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHIM MAHALLATI, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>WIX.COM, INC.<br><br>            Defendant. | Case No. 3:26-cv-01134-WHO<br>Assigned to the Honorable William H. Orrick, Courtroom 2 – 17th Floor<br><br>**MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hearing:<br>Date: May 13, 2026<br>Time: 2:00 p.m.<br>Dept.: Courtroom 2, 17th Floor<br><br>Filing Date:        February 5, 2026<br>Trial Date:        None Set |

- 1 -

**<u>NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT</u>**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 13, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable William H. Orrick, United States District Court Judge for the Northern District of California, San Francisco Division, located at the San Francisco Courthouse, Courtroom 2 – 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Wix.com, Inc. ("Wix" or "Defendant") will move pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing Plaintiff Abrahim Mahallati's Class Action Complaint (the "Complaint").

As grounds for this Motion, Wix will show:

***First***, the Complaint, including the demand for injunctive relief, should be dismissed under FRCP 12(b)(1) because Plaintiff lacks Article III standing.

***Second***, there is no private right of action for a violation of the California Automatic Renewal Law, so that claim must be dismissed.

***Third***, Plaintiff's Complaint should be dismissed because the claims asserted are time-barred under the applicable statutes of limitations.

***Fourth***, the Complaint should be dismissed under FRCP 12(b)(6) because Plaintiff fails to state a claim on which relief can be granted. Plaintiff's other claims fail to plead a violation of California's Unfair Competition Law and False Advertising Law. Plaintiff also fails to plead his fraudulent deception theory claims with particularity under Rule 9(b).

***Fifth***, the Complaint should be dismissed because Wix.com, Inc. is not the proper defendant.

For any or all of these reasons, the Court should dismiss this the Complaint.

Wix bases its motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Declaration of Rachel Lowe and the exhibits attached thereto, and upon such other and further briefing, argument, and evidence as may be presented prior to or at the time of the hearing of this Motion.

- 2 -

Dated: April 2, 2026                           Kathy Huang
                                               Rachel E. K. Lowe
                                               Tracy Yao
                                               **ALSTON & BIRD LLP**

                                               By: */s/ Rachel E. K. Lowe*
                                                     RACHEL E. K. LOWE
                                               ATTORNEYS FOR DEFENDANT
                                               **WIX.COM, INC.**

- 3 -

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 11

I.     INTRODUCTION ................................................................................................ 11

II.    FACTUAL BACKGROUND .............................................................................. 13

     A.     Wix's Services and Terms of Use ............................................................ 13

     B.     Plaintiff's Alleged Subscription with Wix .............................................. 14

III.   ARGUMENT ....................................................................................................... 15

     A.     The Complaint Should Be Dismissed for Lack of Standing Under Rule 12(b)(1). ........................................................................................................ 15

          1.     Plaintiff Has Not Alleged a Concrete Injury. ...................................... 15

          2.     Plaintiff Has No Standing to Seek Injunctive Relief. .......................... 16

     B.     The Complaint Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6). .......................................................................................................... 17

          1.     There Is No Private Right of Action Under the ARL. .......................... 18

          2.     Businesses Cannot Sue for Alleged Violations of the ARL. ................ 18

          3.     Plaintiff's Claims Are Time-Barred. .................................................... 19

              a)     Plaintiff's FAL and ARL claims are time-barred by the applicable three-year statutes of limitations. ............................ 19

              b)     Plaintiff's claims alleging a UCL violation are similarly time-barred. .............................................................................. 20

          4.     Plaintiff Has Not Plausibly Alleged Any Violation of the ARL. ......... 21

          5.     Plaintiff Fails to State Claims for Violation of the FAL and UCL. ...... 24

              a)     Plaintiff Lacks Statutory Standing to Sue Under Both the FAL and UCL Because His Alleged Injury Was Not Caused by Wix's Conduct. ................................................................... 24

              b)     Plaintiff's Claims Fail Because They Do Not Plausibly Seek Cognizable Relief. ....................................................... 25

              c)     Plaintiff's FAL and UCL Fraud Claims Fail Because He Does Not Plead a False Advertisement, Deceptive Conduct, or Reliance with Particularity. .................................. 25

          6.     The UCL Claim Fails for Additional Reasons. ................................... 28

a)    Plaintiff Cannot Use the UCL to Change the Parties' Bargain. ...............................................................................28

b)    The Unlawful Theory Fails Because Plaintiff Does Not Plausibly Allege a Predicate Violation. ...................................29

c)    The Unfair Prong Theory Fails Because Plaintiff's Injury Was Avoidable and Outweighed by Countervailing Benefits to Business Plan Subscribers. ......................................................29

7.    The Complaint Fails to State a Claim Against Wix.Com, Inc. ............30

IV.    CONCLUSION...............................................................................................31

- 5 -

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................18

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................18

*Blair v. Mercedes-Benz of N. Am., Inc.*,
  914 F.2d 261, 1990 WL 127632 (9th Cir. Sept. 6, 1990) (unpublished) .....................19

*Brown v. Bank of Am. N.A.*,
  No. CIV S-10-1758 LKK DAD PS, 2011 U.S. Dist. LEXIS 38991, at *24 (E.D.
  Cal. Mar. 31, 2011)....................................................................................................19

*Caravetta v. GEICO*,
  No. CV-18-0456-TUC-JAS (BGM), 2019 U.S. Dist. LEXIS 125855 (D. Ariz.
  July 26, 2019) ............................................................................................................31

*Christopher v. First Franklin Fin. Corp.*,
  No. 10CV17 DMS (CAB), 2010 U.S. Dist. LEXIS 42932 (S.D. Cal. Apr. 30,
  2010)..........................................................................................................................29

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .....................................................................................................17

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018)......................................................................................17

*Davis v. HSBC Bank*,
  691 F.3d 1152 (9th Cir. 2012).....................................................................................24

*Debono v. Cerebral Inc.*,
  No. 22-cv-03378-AGT, 2023 U.S. Dist. LEXIS 8661 (N.D. Cal. Jan. 18, 2023) .......18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)......................................................................................15

*Fabozzi v. StubHub, Inc.*,
  No. C-11-4385 EMC, 2012 U.S. Dist. LEXIS 19036 (N.D. Cal. Feb. 15, 2012)........30

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir.1995).........................................................................................26

*Gagetta v. Walmart, Inc.*,
  646 F. Supp. 3d 1164 (N.D. Cal. 2022).......................................................................26

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022)......................................................................26

- 6 -

*Herron v. Best Buy Co.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................................................25, 30

*In re Adobe Sys. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014)..............................................................13

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008)..........................................................................27

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..........................................................................25

*Kennedy v. Meta Platforms Inc.*,
   No. 23-cv-06615-HSG, 2024 U.S. Dist. LEXIS 192897 (N.D. Cal. Oct. 23,
   2024)....................................................................................................................13

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)............................................................................13

*Kolar v. Nespresso USA, Inc.*,
   No. CV 24-11235-GW-ASx, 2025 LX 107667 (C.D. Cal. June 13, 2025) .................16

*Krystofiak v. BellRing Brands, Inc.*,
   737 F. Supp. 3d 782 (N.D. Cal. 2024)..............................................................26

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018).....................................................................17

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020)............................................................................16

*Monet v. JPMorgan Chase Bank, N.A.*,
   No. 17-CV-00623-LHK, 2017 U.S. Dist. LEXIS 143419 (N.D. Cal. Sept. 5,
   2017).....................................................................................................................29

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021)...............................................................................26

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001)............................................................................18

*Quattrocchi v. Allstate Indem. Co.*,
   No. 2:17-cv-01578-JAM-EFB, 2018 WL 347779 (E.D. Cal. Jan. 9, 2018), *aff'd*,
   775 F.App'x 330 (9th Cir. 2019)......................................................................28

*Rahman v. Mott's Ltd. Liab. P'ship*,
   No. CV 13-3482 SI, 2014 U.S. Dist. LEXIS 11767 (N.D. Cal. Jan. 29, 2014)...........17

*Simpson v. Cal. Pizza Kitchen, Inc.*,
   989 F. Supp. 2d 1015 (S.D. Cal. 2013) ............................................................16

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..........................................................................................15

- 7 -

*Williby v. Hearst Corp.*,
No. 5:15-cv-02538-EJD, 2017 U.S. Dist. LEXIS 50755 (N.D. Cal. Mar. 31, 2017) ...............................................................................................................31

*Wisdom v. Easton Diamond Sports, LLC*,
No. CV 18-4078 DSF, 2018 WL 6264994 (C.D. Cal. Oct. 9, 2018) ...........................17

*Woodway USA, Inc. v. LifeCORE Fitness, LLC*,
No. 24-cv-1936-AGS-AHG, 2025 LX 48615 (S.D. Cal. May 23, 2025) ....................19

**STATE CASES**

*Brookwood v. Bank of Am.*,
45 Cal.App.4th 1667 (1996) .........................................................................................29

*Cal. Grocers Ass'n. v. Bank of Am.*,
22 Cal. App. 4th 205 (1994) .........................................................................................19

*Camacho v. Auto. Club of S. Cal.*,
142 Cal. App. 4th 1394 (2006) .....................................................................................30

*De La Torre v. CashCall, Inc.*,
5 Cal. 5th 966 (2018) ....................................................................................................29

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ............................................................................................19, 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134 (2003) .................................................................................................25

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ..................................................................................................24

*Madden v. Kaiser Found. Hosps.*,
17 Cal.3d 699 (1976) ....................................................................................................29

*Mayron v. Google LLC*,
54 Cal. App. 5th 566 (2020) .........................................................................................18

*Norgart v. Upjohn Co.*,
21 Cal. 4th 383 (1999) ..................................................................................................21

*People ex rel. City of Santa Monica v. Gabriel*,
186 Cal. App. 4th 882 (2010) .......................................................................................25

*People v. Overstock.com, Inc.*,
12 Cal. App. 5th 1064 (2017) .......................................................................................27

*Rosenbluth Int'l v. Super. Ct.*,
101 Cal.App.4th 1073 (2002) ........................................................................................28

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ...........................................................................................15

- 8 -

Cal. Bus. & Prof. Code § 17208 ................................................................................21

Cal. Bus. & Prof. Code § 17500 ..........................................................................15, 27

Cal. Bus. & Prof. Code § 17600 ...............................................................................15

Cal. Bus. & Prof. Code § 17601 ..........................................................................16, 18

Cal. Bus. & Prof. Code § 17602 .................................................................18, 21, 22, 23

Cal. Civ. Code § 338 ...............................................................................................19

Cal. Civ. Code § 1761(d) .........................................................................................19

Cal. Civ. Proc Code § 338(a) ...................................................................................19

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................2, 10, 12, 25, 26, 28

Fed. R. Civ. P. 12(b)(1).................................................................................2, 10, 15

Fed. R. Civ. P. 12(b)(6).................................................................................2, 10, 18

Civil L.R. 7-4(A)(3) .................................................................................................10

Motion to Dismiss Class Action Complaint
3:26-cv-01134-WHO

## CIVIL L.R. 7-4(A)(3) STATEMENT OF ISSUES TO BE DECIDED

This motion raises the following issues:

1. Whether Plaintiff's Complaint should be dismissed under Rule 12(b)(1) for lack of Article III standing, including lack of standing to seek injunctive relief.

2. Whether Plaintiff's standalone claim under the California Automatic Renewal Law ("ARL") must be dismissed because (1) the ARL provides no private right of action; and/or (2) Plaintiff is not a consumer within the meaning of the statute.

3. Whether Plaintiff's claims are time-barred under the applicable statutes of limitations.

4. Whether the Complaint should be dismissed under Rule 12(b)(6) (and Rule 9(b) where applicable) because Plaintiff fails to plead actionable deception, reliance, and causation, and otherwise fails to state claims under the ARL, California Unfair Competition Law, and California False Advertising Law.

5. Whether the Complaint should be dismissed because Wix.com, Inc. is not a proper defendant.

Dated: April 2, 2026

Kathy Huang
Rachel E. K. Lowe
Tracy Yao
**ALSTON & BIRD LLP**


By: */s/ Rachel E. K. Lowe*
    RACHEL E. K. LOWE
ATTORNEYS FOR DEFENDANT
**WIX.COM, INC.**

- 10 -

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The thrust of the instant lawsuit is that Plaintiff Abrahim Mahallati paid for a business website subscription plan from Wix in December 2021, later saw renewal prices increase, and now labels those increases "deceptive." But the Complaint's own allegations—and the governing Terms of Use Plaintiff agreed to—undercut that narrative. Plaintiff acknowledges that, at signup, Wix disclosed the key terms of its subscription model, including automatic renewal, renewal timing, pricing, and the ability to disable auto-renewal. Yet when it comes to the alleged "deception," the Complaint is conspicuously light on the facts that matter: it identifies no misleading statement, no deficient disclosure, and no facts describing the renewal-related notices Plaintiff received before the annual charges in 2022, 2023, and 2024. Those omissions are fatal. A price increase, without more, does not plausibly plead deception, let alone fraud. The California Automatic Renewal Law ("ARL"), under which Plaintiff sues, contemplates that subscription prices may change and regulates only how and when *notice* of those changes must be provided; the ARL is not concerned with price-setting. That reflects practical reality: subscribers may maintain services for many years, and companies like Wix are not required to hold prices static forever. These foundational pleading defects pervade the Complaint and warrant dismissal for multiple independent reasons.

At the threshold, this case should be dismissed for lack of Article III standing. Plaintiff alleges only an "overpayment" theory, which requires facts showing that a misrepresentation rendered the product worth less than what he paid. Plaintiff admits that he agreed to Terms of Use expressly advising that renewal pricing could change with notice and that automatic renewal could be disabled. The Complaint strategically avoids alleging that Plaintiff did not receive notice of renewal pricing changes and pleads no concrete facts showing a hidden practice or a misleading communication that caused him to pay more. And to the extent Plaintiff seeks injunctive relief, he cannot establish any real and immediate threat of future harm: he is no longer a Wix subscriber and does not allege any intent to subscribe again.

- 11 -

Second, even setting issues of standing aside, Plaintiff's standalone claim under the ARL fails as a matter of law because (1) there is no private right of action under that statute; and (2) Plaintiff signed up for Wix business subscription on behalf of his business and is thus not a "consumer" within the meaning of the statute.

Third, Plaintiff's claims are time-barred under the applicable statutes of limitations. By his own allegations, Plaintiff was on notice of the Terms of Use in December 2021 and aware of the first alleged "overcharge" in December 2022, yet he waited until February 2026 to sue. The statutory deadlines foreclose Plaintiff's claims, and he cannot plead around them.

Finally, even if a private plaintiff could sue under the ARL, the Complaint still fails to state a claim. Plaintiff's own allegations and the Terms of Use defeat his theory. Plaintiff's FAL and UCL claims fail for the same reason: they never identify an actionable false advertisement or misleading misstatement, let alone plead fraud with the particularity required by Rule 9(b). Plaintiff's "fraud" theory rests on his own assumption that renewal prices would never change—not on any alleged promise by Wix—and unreasonable assumptions do not state a claim. Nor does Plaintiff plausibly plead causation or statutory standing where he was expressly told he could disable auto-renewal, yet claims injury from renewals he could have avoided.

At the pleading stage, Plaintiff bears the burden of alleging facts showing that Wix failed to disclose material information or misled reasonable consumers. The Complaint is notably silent about the renewal-related notices that Plaintiff received from Wix before any renewal charges occurred. Vague allegations that renewal prices increased—without more—do not suffice. Plaintiff cannot rely on generalized accusations of deception while omitting the very facts necessary to evaluate those claims. That fundamental pleading defect is dispositive and carries through each of Plaintiff's causes of action, all of which fail for independent and overlapping reasons. Because Plaintiff has not pleaded a cognizable, timely, and actionable theory of deception under any of the statutes he invokes, the Complaint should be dismissed in its entirety.

- 12 -

## II.      FACTUAL BACKGROUND

### A.      Wix's Services and Terms of Use

Wix operates a website development platform, wix.com, that allows users to create and host websites. (Compl. ¶ 19.) Wix is primarily a platform for businesses. Wix's services are available to users on a subscription basis, with various subscription tiers offering different features and pricing structures. (*Id.*) When users sign up for a Wix subscription, they agree to Wix's Terms of Use (the "TOUs"). (*Id.* ¶ 22.)

The TOUs in effect in December 2021 (the "2021 TOUs") have several provisions addressing the pricing and renewal of Wix subscriptions. (Declaration of Rachel Lowe, Ex. A ("2021 TOUs").)[1] In particular, section 5.1, Paid Services, informs users that "**Wix reserves the right to change its Fees any time, upon notice to you if such change may affect your existing subscriptions.**" (*Id.* at 10 (emphasis added).)

Section 5.3, Subscription Auto-Renewals, discloses the timing of renewal charges, namely that, "[i]n order to ensure that [users] do not experience any interruption of loss of services" at the end of the subscription period, Wix will automatically renew subscriptions "**unless you [the user] turn-off the auto-renewal option**." (2021 TOUs at 11 (emphasis in original).) If autorenewal is not turned off, the subscription will "automatically renew upon the end of the applicable subscription period, for a renewal period equal in time to the original subscription period (excluding extended periods) and, unless otherwise notified to you, at the same price (subject to applicable Taxes changes and excluding any discount or other promotional offer provided for the first period)." (*Id.*) Furthermore, the 2021 TOUs further provide that Wix "**will attempt to automatically charge you the applicable Fees using the Stored Card, within up-to two (2) weeks before such renewal period commences**." (*Id.* (emphasis added).)

---

[1] The Court may consider the 2021 TOUs for the reasons set forth in Wix's concurrently filed Request for Judicial Notice.

The 2021 TOUs also disclosed Wix's cancellation policy at the time in section 6.1: "You may discontinue to use and request to cancel your User Account and/or any Wix Services at any time, in accordance with the instructions available on the Wix Services." (2021 TOUs at 13.) Section 5.4 makes clear that refunds in connection with cancellations are guaranteed only within the first fourteen days of the initial purchase:

> If you are not satisfied with Wix Services that are subject to a Fee for a period of service or subscription commitment and which is your initial purchase of such service, you may provide notice of cancellation for any reason within fourteen (14) days of having first ordered or activated such Wix Services (the "Refund" and "Refund Period"). **The Refund is applicable only to the initial purchase of Wix services** which is an upgrading of a free website by purchasing a Premium Plan (as offered on the Wix Website). **The Refund is not applicable to any additional purchases, upgrades, modification or renewals of Wix Services**.

(*Id.* at 11-12 (emphasis added).)[2]

### B.    Plaintiff's Alleged Subscription with Wix

Plaintiff allegedly signed up for a "Premium Business Plan Unlimited" subscription from Wix on December 27, 2021, and paid $291.60. (Compl. ¶ 32.) At checkout, Wix disclosed the full subscription price, billing frequency, and duration of the chosen plan, along with the Terms of Use. (*Id.* ¶ 21-22.) Plaintiff agreed to Wix's TOUs upon signing up and by subsequently using Wix's services.[3] (*See id.* ¶¶ 22-23.) After making the purchase, Plaintiff received an acknowledgment email informing him that Wix subscriptions automatically renew by default but he could "disable auto-renewal . . . at any time in [his] account settings." (*Id.* ¶ 36.) The acknowledgment email also informed Plaintiff that his subscription would

---

[2] The 2021 TOUs further include a forum-selection clause and a choice-of-law provision specifying New York as the governing law and forum for users in the United States. (2021 TOUs at 21-22.) Plaintiff also agreed to a class action waiver. (*Id.*) Wix expressly reserves all rights to enforce these provisions, including through a motion to compel arbitration or to dismiss or transfer for improper venue, and does not waive any contractual or procedural defenses.

[3] Wix reserves all rights to challenge Plaintiff's ability to pursue any users' claims, including because he purchased this business subscription for his business called Heresy Cake. The vast majority of Wix's customers are businesses that are not "consumers" within the meaning of the statutes under which Plaintiff sues.

- 14 -

renew at the full price (as opposed to the discounted price paid by Plaintiff) and the timing of the renewal, stating that his "subscription w[ould] automatically renew for USD324.0000 on Dec 13, 2022." (*Id.* ¶ 33.)

Plaintiff alleges that he renewed his subscription at least three more years. (*See* Compl. ¶¶ 34-35.) Specifically, Plaintiff alleges that Wix charged him $384.00 for a subscription renewal on December 13, 2022, and $432.00 for a subscription renewal two years after that on December 13, 2024. Plaintiff further generally alleges that he did not receive notice of, and did not consent to, the renewal charges at the allegedly increased prices, and that he was overcharged as a result.

Based on these allegations, Plaintiff asserts claims on behalf of a putative class under the FAL, Cal. Bus. & Prof. Code § 17500 et seq., the UCL, Cal. Bus. & Prof. Code § 17200 et seq., and the ARL, Cal. Bus. & Prof. Code § 17600 et seq.

## III.   ARGUMENT

### A.   The Complaint Should Be Dismissed for Lack of Standing Under Rule 12(b)(1).

Plaintiff lacks standing and fails to state any claim against Wix. Plaintiff, as the party invoking the federal court's jurisdiction, "bears the burden of showing that Article III standing exists." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).

#### 1.   Plaintiff Has Not Alleged a Concrete Injury.

Plaintiff lacks Article III standing because he has not alleged an injury in fact. To establish standing, a plaintiff must plead an injury that is "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Plaintiff alleges only economic injury based on an overpayment theory. (*See* Compl. ¶¶ 29, 73.) But an economic injury of that kind "typically requires a loss of the plaintiff's benefit of the bargain, such as by overpayment, loss in value, or loss of usefulness." *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013). "[A] plaintiff cannot

establish an overpayment injury where the product at issue 'disclosed' the purported defect at the time of purchase, because they cannot form a reasonable expectation that the product was worth more." *Kolar v. Nespresso USA, Inc.*, No. CV 24-11235-GW-ASx, 2025 LX 107667, at *11 (C.D. Cal. June 13, 2025) (citation omitted).

The Ninth Circuit's decision in *McGee* is instructive. There, the court held that the plaintiff had not alleged sufficient economic injury on an overpayment theory. *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 708 (9th Cir. 2020). The Ninth Circuit explained that, without allegations of a hidden defect or a product worth objectively less than what was paid for, the plaintiff must allege some misrepresentation about the product and, there, the challenged product characteristic was knowable. *Id.* Here, Plaintiff alleges that his Wix subscription renewed at higher prices in 2022, 2023, and 2024 than what he paid in 2021. (*See* Compl. ¶¶ 33-35.) But he also acknowledges that he agreed to the TOUs that expressly disclose that renewal prices could change. Section 5.1 of the TOUs, Paid Services, informs users that "Wix reserves the right to change its Fees any time, upon notice to you if such change may affect your existing subscriptions." (2021 TOUs at 10).

Just as the disclosure of transfat content in *McGee* foreclosed an overpayment standing theory, the disclosure here that renewal pricing could increase undercuts Plaintiff's claimed injury.[4] Plaintiff conspicuously does not allege that he failed to receive subscription renewal notices in 2022, 2023, or 2024, alleging only in a conclusory manner that he was not notified of "Defendant's deceptive billing practices."[5] (*See* Compl. ¶¶ 34-35, 39.) Plaintiff fails to meet his burden to plausibly claim that he paid more than the subscription was worth. Because Plaintiff has not alleged a cognizable economic injury, he lacks Article III standing.

### 2.    Plaintiff Has No Standing to Seek Injunctive Relief.

Plaintiff also lacks standing to seek injunctive relief for the independent reason that he cannot show any actual or imminent threat of future injury. To establish standing for

---

[4] Even the California automatic renewal law contemplates that renewal prices may change. Cal. Bus. and Prof. Code § 17601.

[5] Indeed, Plaintiff could not so allege since he did receive notice, including of price increases.

- 16 -

prospective relief, a plaintiff must allege a "sufficient likelihood that [s]he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). As relevant here, that requires allegations that the plaintiff wants or intends to purchase the challenged product in the future. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018); *see also Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) ("A some day intention—without any description of concrete plans, or indeed even any specification of when the some day will be—does not support a finding of the actual or imminent injury that Article III requires.") (citation modified).

Plaintiff makes no such allegations here. He is no longer a Wix subscriber. (*See* Compl. ¶ 35 (alleging a December 27, 2025 expiration date); *id.* ¶ 13 (identifying last alleged renewal charge).) Throughout the Complaint, Plaintiff takes issue with Wix's subscriptions terms, but he does not plausibly allege he will ever subscribe again or be deceived in the future. To the contrary, he "is now fully aware of the alleged misrepresentations" and fails "to allege that he intends to purchase the Class Products again in the future." *Rahman v. Mott's Ltd. Liab. P'ship*, No. CV 13-3482 SI, 2014 U.S. Dist. LEXIS 11767, at *34–35 (N.D. Cal. Jan. 29, 2014) (dismissing injunctive relief demand for lack of standing). Likewise, there is no allegation that Plaintiff will regularly encounter the supposedly false advertising again. *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSx), 2018 WL 6264994, at *2 (C.D. Cal. Oct. 9, 2018) (holding the plaintiff lacked standing to seek injunctive relief where the plaintiff failed to allege that he "regularly purchases bats, or is regularly visiting stores where bats are sold"). Because Plaintiff alleges only past harm and no plausible threat of future injury, he lacks standing to seek injunctive relief.

**B.    The Complaint Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6).**

Plaintiff fails to state a cognizable claim under the ARL, UCL, or FAL. Rule 12(b)(6) requires a plaintiff to "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action,

- 17 -

supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," courts must dismiss plaintiffs' claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

### 1. There Is No Private Right of Action Under the ARL.

The standalone claim for violation of the ARL asserted in Count III of the Complaint must be dismissed because there is no private right of action under the ARL. *See Mayron v. Google LLC*, 54 Cal. App. 5th 566, 573-74 (2020) ("Seeing no clear indication of intent to create a private right of action in either the statutory text or its legislative history, we conclude there is no such right under the automatic renewal law."); *Debono v. Cerebral Inc.*, No. 22-cv-03378-AGT, 2023 U.S. Dist. LEXIS 8661, at *2 (N.D. Cal. Jan. 18, 2023) ("The ARL doesn't include a private right of action.").

### 2. Businesses Cannot Sue for Alleged Violations of the ARL.

Even if there were a private right of action under the ARL—and there is not—the statute applies only to autorenewal offers made to individual consumers. The ARL does not apply to automatic renewal plans offered to businesses. Plaintiff admits that he signed up for a "Premium Business Plan Unlimited" subscription from Wix. (Compl. ¶ 32.)[6]

By its terms, the ARL governs only businesses that make "an automatic renewal offer [] to a **consumer** in this state." Cal. Bus. & Prof. Code § 17602 (emphasis added). The statute defines a "consumer" as "any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes." Cal. Bus. & Prof. Code § 17601(a)(4). The same definition of "consumer" is used in the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d), and courts interpreting the CLRA have consistently held that businesses lack standing to sue because they are not "consumers" within the meaning of the statute. *Woodway USA, Inc. v. LifeCORE Fitness, LLC*, No. 24-cv-1936-AGS-AHG, 2025 LX 48615, at *9 (S.D. Cal. May 23, 2025); *Cal.*

---

[6] Plaintiff subscribed for his business Heresy Cake.

*Grocers Ass'n. v. Bank of Am.*, 22 Cal. App. 4th 205, 217 (1994) (concluding that the CLRA "does not apply" because the plaintiff association of grocers was "not a consumer"); *Blair v. Mercedes-Benz of N. Am., Inc.*, 914 F.2d 261, 1990 WL 127632, at *2 (9th Cir. Sept. 6, 1990) (unpublished) (holding that the CLRA "grant[s] standing to individuals, not to corporations").

Plaintiff is not a consumer under the ARL. He signed up for a "Premium Business Plan Unlimited" subscription from Wix on behalf of his business and kept that business subscription plan for four years. (Compl. ¶¶ 32-35.) Wix therefore did not make an offer of autorenewal to him as a consumer within the meaning of the statute. For that independent reason, Plaintiff's ARL claim should be dismissed.

### 3. Plaintiff's Claims Are Time-Barred.

#### a) Plaintiff's FAL and ARL claims are time-barred by the applicable three-year statutes of limitations.

Unless otherwise specified, statutory claims in California are subject to a three-year statute of limitations period. Cal. Civ. Code § 338. Accordingly, even if an ARL claim existed, a three-year statute of limitations—at most—would apply to it. The same three-year limitations period applies to claims under the FAL. Cal. Civ. Proc Code § 338(a); *Brown v. Bank of Am. N.A.*, No. CIV S-10-1758 LKK DAD PS, 2011 U.S. Dist. LEXIS 38991, at *24 (E.D. Cal. Mar. 31, 2011) (dismissing claims for violation of the FAL and UCL where the plaintiff entered into a loan transaction in 2005, yet waited four and a half years to bring suit). A plaintiff is held not only to his actual knowledge, but also to "knowledge that could reasonably be discovered through investigation of sources open to h[im]." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988). In California, "the plaintiff must go find the facts; []he cannot wait for the facts to find h[im]." *Id*. at 1111. Here, Plaintiff's own allegations compel dismissal based on the statute of limitations.

Plaintiff's FAL claim is time-barred. The only FAL violation Plaintiff alleges is that Wix charged him more upon renewal beginning in 2022 than the price advertised in 2021.

- 19 -

(*See* Compl. ¶ 53.) But Plaintiff was on notice of the alleged price increases, at the latest, by December 2022 based on the allegations in the Complaint. One, he was on notice that prices may increase as of December 2021 when he agreed to the Wix TOUs.[7] (Compl. ¶ 22, 23; 2021 TOUs at 10.) Two, he alleges that his subscription renewed in December 2022 at a price approximately $60 higher than the original subscription price. (*Id.* ¶ 34.) By Plaintiff's own account, that was the first alleged "overcharge" and thus the point at which he was aware— or reasonably should have been aware—of his purported FAL claim. Yet, Plaintiff did not bring suit until February 5, 2026, well over three years later. The FAL claim is therefore time-barred.

Plaintiff's ARL claim is likewise time-barred. Plaintiff alleges that Wix violated the ARL by "failing to provide Plaintiff and Class Members with clear and conspicuous terms of its subscription services, increasing the recurring subscription charge, and continuing to charge consumers without their affirmative authorization." (Compl. ¶ 80.) But Plaintiff subscribed to Wix in December 2021—more than four years before bringing suit—at which time he consented to the TOUs. (*Id.* ¶¶ 22-23.) If he had an issue with those terms or the failure to provide clear and conspicuous terms, he was on notice of that by December 2021. To the extent Plaintiff challenges an allegedly unlawful price increase, Plaintiff alleges that the increased price was first charged in December 2022. (*Id.* ¶ 34.) In either circumstance, Plaintiff was on notice of the conduct underlying his ARL claim more than three years before he filed this action. Plaintiff's ARL and FAL claims are thus foreclosed by his own admissions.

**b)    *Plaintiff's claims alleging a UCL violation are similarly time-barred.***

A claim under the UCL must be brought within four years of accrual. Cal. Bus. & Prof. Code § 17208. For this claim, Plaintiff complains of Wix's alleged false advertising;

---

[7] Plaintiff does not allege any price increase for the subscription period from 2023 to 2024. (*See* Compl. ¶¶ 34, 35.)

Plaintiff does not allege violation of the ARL as a predicate for his UCL claim. (Compl. ¶¶ 66, 70, 74.) To be actionable, any false advertisement would have been viewed by Plaintiff before he subscribed in December 2021 and thus would have been known—or at least knowable—at the time of purchase. Moreover, Wix's TOUs were presented to Plaintiff and he assented to the 2021 TOUs by signing up for a Wix subscription. The TOUs disclosed when charges would occur, when refunds were available, and that subscription prices could increase. (2021 TOUs at 10-12.) Plaintiff therefore had notice of the very practices he now challenges when he subscribed, yet he waited more than four years to file suit.

*** 

Plaintiff's claims are time-barred, and his own admissions foreclose any attempt to avoid that result through artful pleading. *Norgart v. Upjohn Co*., 21 Cal. 4th 383, 395 (1999) (explaining that "[i]nasmuch as it necessarily fix[es] a definite period[] of time, . . . [the statute of limitations] operates conclusively across the board, and not flexibly on a case-by-case basis.") (second and third alterations in original) (citations omitted).

### 4.    Plaintiff Has Not Plausibly Alleged Any Violation of the ARL.

Even if there were a private right of action (there is not) and even if such a claim were not time-barred (it is), the Complaint does not plausibly allege that Wix violated any of the three provisions in Business and Professions Code Section 17602(a), the particular ARL section he claims was violated. Specifically, Plaintiff alleges that Wix: (1) failed to present the automatic renewal terms in a clear and conspicuous manner before the subscription was fulfilled; (2) charged his credit card for an automatic renewal without first obtaining his affirmative consent to the renewal terms; and (3) failed to provide an acknowledgment that included the renewal terms, cancellation policy, and information on how to cancel. (Compl. ¶ 79.)[8] Plaintiff's allegations show that Wix complied with the ARL.

---

[8] Plaintiff alleges that he subscribed to Wix in December 2021, when an earlier version of the ARL was in effect. Section 17602 was amended effective July 1, 2022, and again effective July 1, 2025. Those amendments are not retroactive. *See, e.g.*, Cal. Bus. & Prof. Code § 17602 (j). As the statute makes clear, the amended provisions apply only prospectively and do not govern conduct predating their effective dates. Wix reserves the right to challenge any attempt by Plaintiff to impose

First, Wix provided Plaintiff with the automatic renewal terms in a clear and conspicuous manner on the website pre-purchase, at the time of purchase, and in a post-purchase acknowledgment email. As relevant here, the ARL is violated only if a business "[f]ail[s] to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled." Cal. Bus. & Prof. Code § 17602(a)(1). Plaintiff alleges that Wix disclosed on its website pre-purchase the subscription price, billing frequency, and duration of his selected subscription plan. (Compl. ¶ 21.) Plaintiff further acknowledges that, at the time of purchase, he agreed to Wix's TOUs and received information explaining how Wix subscriptions operate. (*Id.* ¶¶ 22, 23, 33, 36.) The 2021 TOUs clearly described the automatic renewal feature, the ability to disable auto-renewal, and Wix's cancellation policy—under which subscriptions may be cancelled at any time, with refunds guaranteed only within fourteen days of the initial purchase. (2021 TOUs at 10-13.) Plaintiff also alleges that, at signup, he was informed that his renewal charge would occur on December 13, 2022 (Compl. ¶ 33), which was two weeks before the end of his subscription period, consistent with the 2021 TOUs (2021 TOUs at 11).

The Complaint does not allege that the automatic renewal feature was hidden, obscured, or presented in a manner a reasonable consumer could not understand, nor does it identify any disclosure that was unclear or inconspicuous. Although Plaintiff challenges later renewal prices, the 2021 TOUs expressly permit price changes, providing in section 5.1, Paid Services, that "Wix reserves the right to change its Fees at any time, upon notice to you if such change may affect your existing subscriptions." (2021 TOUs at 10.) Generalized allegations that renewal prices increased over a period of four years do not plausibly establish that Wix failed to present clear and conspicuous autorenewal terms.[9]

---

laws not yet in effect against it, though the quoted obligations in Section 17602 appear to be in the original.

[9] While Plaintiff's Complaint is silent as to whether he received notice prior to annual renewals; he did, and he cannot allege otherwise.

- 22 -

Second, Plaintiff does not plausibly allege that Wix charged his credit card for an automatic renewal without obtaining his affirmative consent. *See* Cal. Bus. & Prof. Code § 17602(a)(2). The Complaint alleges that Wix presents a subscription agreement at the point of sale, and users agree to those terms when signing up for services, including subscription billing and renewal. (Compl. ¶¶ 22-23.) In particular, the 2021 TOUs inform users that the renewal fee will be automatically charged two weeks prior to the subscription end date if autorenewal is not disabled. (2021 TOUs at 11.) Plaintiff does not allege that his subscription was converted into an automatic renewal without his agreement; indeed, he claims that he signed up for subscription service and knew it would automatically renew. (Compl. ¶¶ 22, 30, 33.)[10] Plaintiff fails to plead a lack of affirmative consent as required for a plausible violation of the ARL.

Third, Plaintiff does not plausibly allege that Wix failed to provide a compliant acknowledgment including the renewal terms, cancellation policy, and information on how to cancel. *See* Cal. Bus. & Prof. Code § 17602(a)(3). Again, Plaintiff acknowledges receiving information following his initial purchase explaining Wix's subscription model and cancellation policy. He also acknowledges receiving Wix's TOUs. (Compl. ¶¶ 22-23.) But the Complaint is silent as to what notices and information Wix provided before his renewal dates, including with respect to renewal pricing, charge date, and the autorenewal feature, especially considering that the 2021 TOUs expressly contemplate and permit price changes with notice. Instead, Plaintiff relies on vague assertions that he was not notified of "deceptive billing practices," which do not plausibly allege the absence of a post-purchase acknowledgment required by the ARL.

In sum, the Complaint does not plausibly allege any violation of the ARL.

---

[10] Again, Plaintiff's Complaint is intentionally silent as on this point. He could not claim he did not provide his consent to being charged autorenewal charges; he did. He even re-supplied his credit card at the time of renewal.

- 23 -

**5.      Plaintiff Fails to State Claims for Violation of the FAL and UCL.**

> **a)      *Plaintiff Lacks Statutory Standing to Sue Under Both the FAL and UCL Because His Alleged Injury Was Not Caused by Wix's Conduct.***

Plaintiff lacks statutory standing to sue under the FAL and UCL because any injury he allegedly suffered in supposedly overpaying in 2022, 2023, and 2024 was caused by his own failure to disable the autorenewal option, not Wix's representations or practices. To bring a claim under the UCL and FAL, a plaintiff must "show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

Here, as Plaintiff acknowledges, Wix informed him "when he first purchased a subscription" that he could "disable auto-renewal." (Compl. ¶ 36.) Furthermore, the 2021 TOUs, which Plaintiff had notice of both at the time of purchase and after and which he agreed to (*see id.* ¶¶ 22-23), clearly inform users that subscriptions will automatically renew unless they turn off the auto-renew option, explaining that this practice is intended to prevent subscribers from losing their domain or experiencing interruptions with their websites. (2021 TOUs at 11.) Plaintiff therefore could have disabled the autorenewal feature at any time, but he never did so. The Complaint also fails to allege whether Plaintiff made any efforts to contact Wix regarding his purported issues with his subscription renewing automatically. Accordingly, because any alleged harm was caused by his own failure to act, as opposed to Wix's conduct, Plaintiff has not plausibly alleged a cognizable injury sufficient to confer statutory standing under the FAL or the UCL. *See Davis v. HSBC Bank*, 691 F.3d 1152, 1170 (9th Cir. 2012) ("Because Davis . . . refused to cancel his card within 90 days[,] we must conclude that any harm he suffered *was the product of his own behavior*, not the advertisements.") (emphasis added); *see also Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1178 (E.D. Cal. 2013) ("Since Plaintiff refused to return his Laptop for a full refund, his harm

- 24 -

was avoidable, and likely any harm he suffered was the product of his own behavior, rather than Best Buy's actions.") (citation modified).

### b)   Plaintiff's Claims Fail Because They Do Not Plausibly Seek Cognizable Relief.

Plaintiff's equitable claims fail too because Plaintiff does not plausibly seek injunctive or restitutionary relief. Generally, prevailing plaintiffs in UCL and FAL cases are "limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003). Nonrestitutionary disgorgement is unavailable. *Id.* at 1145, 1152. Yet, Plaintiff seeks relief that is non-restitutionary in nature. He seeks "disgorgement and restitution to Plaintiff and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable." (Compl. ¶ 58.) This demand runs afoul of the California Supreme Court's opinion in *Korea Supply* because Plaintiff is seeking nonrestitutionary disgorgement akin to damages. In *Korea Supply*, the California Supreme Court rejected a demand for lost profits, explaining, "The remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants." 29 Cal. 4th at 1150. Here, too, Plaintiff cannot seek Wix's revenues under a UCL theory.[11] And Plaintiff cannot seek an injunction including because, as stated above, he lacks standing to do so.

### c)   Plaintiff's FAL and UCL Fraud Claims Fail Because He Does Not Plead a False Advertisement, Deceptive Conduct, or Reliance with Particularity.

Plaintiff's threadbare and vague allegations of fraud by Wix do not meet the heightened pleading standard under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.") A claim for fraudulent

---

[11] Plaintiff's claim for attorneys' fees is likewise baseless. *See People ex rel. City of Santa Monica v. Gabriel*, 186 Cal. App. 4th 882, 891 (2010) ("The UCL does not authorize an award of attorney fees. No exception exists for UCL actions predicated on a statute that authorizes such an award.").

misrepresentation under the FAL and UCL requires "(1) misrepresentation or omission, (2) reliance, and (3) damages." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022). Reliance is required for standing to bring FAL, and UCL claims. *Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1175 (N.D. Cal. 2022).

The reasonable consumer test applicable to these claims requires that a plaintiff show "members of the public are likely to be deceived" by the challenged representation. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) (quoting *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992)). A consumer's "unreasonable assumptions" do not support a misrepresentation claim. *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 799 (N.D. Cal. 2024) (citing *Thomas v. Costco Wholesale Corp.*, No. 21-55335, 2022 WL 636637, at *2 (9th Cir. Mar. 4, 2022); *Moore v. Trader Joe's Co.*, 4 F.4th 874, 883 (9th Cir. 2021).)

First, Plaintiff has not alleged any facts amounting to fraud or a false advertising by Wix. Plaintiff's UCL fraud claim rests entirely on his allegation that he "assumed" the price would never change upon renewal:

> Such deception is evidenced by the fact that Plaintiff agreed to purchase yearly subscriptions **under the basic assumption that they would be charged the original purchase price**. . . .

> Defendant deceived Plaintiff and other Class Members by representing that the subscriptions would be renewed at the original purchase price on Defendant's website, and thus falsely represented the subscription services.

(Compl. ¶¶ 70-71 (emphasis added).) As explained above, Plaintiff does not allege any actual representation by Wix that the original price would never change. Plaintiff's assumption does not give rise to a claim under the UCL. No user was plausibly misled. Consistent with Ninth Circuit precedent, a consumer's "unreasonable assumptions," like that alleged here, do not support a misrepresentation claim under California's consumer protection statutes. *Moore v. Trader Joe's Co.*, 4 F.4th at 883.

Indeed, as explained above, the facts alleged instead show that Wix's business plan subscription billing practices were disclosed. Wix expressly discloses that it retains the right

- 26 -

to increase prices with notice (2021 TOUs at 10), and the Complaint is silent as to what notices Plaintiff received prior to each subscription renewal. Further underscoring the absence of fraud, the ARL itself contemplates that companies may increase subscription prices from year to year.[12]

At most, Plaintiff alleges elsewhere in the Complaint that, in December 2021, *after* he "purchased []his subscription," he received an email stating the price that would be charged for renewal in December 2022. (Compl. ¶ 33.) But Plaintiff could not have been defrauded into taking any action based on that communication because he had already completed the subscription purchase. And, as Plaintiff admits, that purchase was accompanied by his agreement to the 2021 TOUs expressly providing that Wix could change subscription prices upon renewal. (*Id.* ¶ 22-23; 2021 TOUs at 10.) Plaintiff's fraud theory therefore rests entirely on his unilateral assumption that Wix would never increase the subscription price. But that assumption requires an illogical inferential leap that the Court should not credit. While courts must accept well-pleaded factual allegations as true, they are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Plaintiff identifies no affirmative statement by Wix that could reasonably support an inference that the original price would apply in perpetuity.

Second, Plaintiff's FAL claim fails for the same reason: he does not identify any statement or representation by Wix that was false or misleading when made and that "induce[d] the public to enter into any obligation relating thereto," as the statute requires. Cal. Bus. & Prof. Code § 17500; *People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1085 (2017). ("The FAL applies to an untrue or misleading statement 'which is known, or which *by the exercise of reasonable care should be known*, to be untrue or misleading.'") (quoting Cal. Bus. & Prof. Code § 17500). Plaintiff's sole overcharging allegation is a conclusory

---

[12] With the introduction of facts, Wix would also be able to show that it provided notice of the increased price and would therefore fall within *Cel-Tech's* safe harbor for the UCL by complying with the UCL.

assertion that "Defendant represented to Plaintiff and Class Members that such services would be billed at one rate and then charged Plaintiff and Class Members a different rate that was more expensive." (Compl. ¶ 53.) But Plaintiff fails to plead what specific advertisement by Wix was false, when it was made, or how it induced him to enter into his subscription obligation, as required by Rule 9(b). Elsewhere in the Complaint, the only pricing-related representation Plaintiff identifies is a December 2021 email from Wix stating the renewal price. Plaintiff admits that email was sent after he had already "purchased this subscription." (*Id.* ¶ 33.) Because it post-dated his purchase, it could not have induced him to enter into any obligation and therefore cannot constitute an actionable *advertisement* under the FAL.

For these same reasons, Plaintiff fails to plead reliance. Having identified no false or misleading advertisement that induced him to enter into his subscription, Plaintiff cannot plausibly allege that he relied on any misstatement by Wix. Instead, his theory rests on his own unilateral assumptions about future pricing, which are insufficient to establish reliance as a matter of law.

At bottom, Plaintiff's claims rest on threadbare and conclusory allegations that do not state a viable fraud-based claim.

### 6.    The UCL Claim Fails for Additional Reasons.

#### a)    *Plaintiff Cannot Use the UCL to Change the Parties' Bargain.*

Plaintiff cannot use the UCL as a sword to change the terms of the 2021 TOUs. *See, e.g.*, *Quattrocchi v. Allstate Indem. Co.*, No. 2:17-cv-01578-JAM-EFB, 2018 WL 347779, at *3 (E.D. Cal. Jan. 9, 2018) ("[C]ourts have found that no UCL claims lie where the defendant has followed the express language of unambiguous provisions from insurance policies and other contracts."), *aff'd*, 775 F.App'x 330 (9th Cir. 2019); *Rosenbluth Int'l v. Super. Ct.*, 101 Cal.App.4th 1073, 1077 (2002) (explaining that the UCL is not a catch-all for breach of contract). The 2021 TOUs plainly describe that renewal prices may change. (2021 TOUs at 10.) Plaintiff cannot now use California's consumer protection statutes to end-run those terms and bind Wix to its December 2021 product price for the four subsequent years. *Madden v.*

- 28 -

*Kaiser Found. Hosps.*, 17 Cal.3d 699, 710 (1976) ("[O]ne who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language[.]"); *Brookwood v. Bank of Am.*, 45 Cal.App.4th 1667, 1674 (1996) ("Reasonable diligence requires the reading of a contract before signing it."). There is no unfair competition where Wix never promised to freeze prices in perpetuity and, instead, the his agreement with Wix expressly provides otherwise.

**b)** **The Unlawful Theory Fails Because Plaintiff Does Not Plausibly Allege a Predicate Violation.**

Plaintiff's UCL claim fails the "unlawful" prong because he has not sufficiently alleged a violation of the FAL, which is the only predicate unlawful act alleged for the UCL claim in the Complaint. (Compl. ¶ 74). The UCL's "unlawful" prong "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 980 (2018) (citation modified). If Plaintiff's underlying statutory claim fails, his "unlawful" UCL claim fails as well. *See Christopher v. First Franklin Fin. Corp.*, No. 10CV17 DMS (CAB), 2010 U.S. Dist. LEXIS 42932, at *9 (S.D. Cal. Apr. 30, 2010) (where plaintiffs have not properly pled any statutory violations, UCL claim fails); *Monet v. JPMorgan Chase Bank, N.A.*, No. 17-CV-00623-LHK, 2017 U.S. Dist. LEXIS 143419, at *22 (N.D. Cal. Sept. 5, 2017) (plaintiff's failure to adequately allege an underlying statutory violation is fatal to plaintiff's UCL claim premised on those statutory violations). Because Plaintiff's predicate FAL Law claim fails for the reasons discussed above, he also fails to state a UCL claim under the "unlawful" prong.

**c)** **The Unfair Prong Theory Fails Because Plaintiff's Injury Was Avoidable and Outweighed by Countervailing Benefits to Business Plan Subscribers.**

To state an "unfair" business practice under the UCL, a plaintiff must allege conduct that is substantially injurious to consumers, not outweighed by countervailing benefits, and not reasonably avoidable. *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403

Motion to Dismiss Class Action Complaint
3:26-cv-01134-WHO

(2006). Plaintiff does not meet that standard. As explained above, any injury Plaintiff allegedly suffered could have been reasonably avoided if he had disabled the autorenewal option. *See Fabozzi v. StubHub, Inc.*, No. C-11-4385 EMC, 2012 U.S. Dist. LEXIS 19036, at *26 (N.D. Cal. Feb. 15, 2012) (granting motion to dismiss UCL claim where "Plaintiff fail[ed] to explain how the alleged harm could not have been reasonably avoided"); *Camacho*, 142 Cal. App. 4th at 1406; *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1178 (E.D. Cal. 2013) ("Since Plaintiff refused to return his Laptop . . . his harm was avoidable[.]").

Moreover, the conduct Plaintiff challenges—automatic renewal, renewal pricing, early renewal billing, and limitations on refunds—was disclosed to subscribers at signup, in subsequent emails, and in the governing TOUs. And, as opposed to monthly services, Plaintiff signed up for an annual Business Premium Plan – a business plan that common sense dictates is for businesses seeking continuity of service and prevention of website or domain interruptions. Automatically renewing business' website subscriptions to avoid disruptions in service serves legitimate benefits to businesses.

In sum, where, as here, the alleged injury is reasonably avoidable and/or outweighed by legitimate benefits, a disagreement with disclosed subscription practices does not constitute "unfair" conduct under the UCL.

### 7.    The Complaint Fails to State a Claim Against Wix.Com, Inc.

Plaintiff's claims should be dismissed because the Complaint does not plausibly allege that Wix.com, Inc. engaged in the conduct at issue or is otherwise liable for it. The 2021 TOUs governing Plaintiff's subscription expressly identify Wix.com Ltd. as the entity that forms the agreement with users. The Complaint contains no entity-specific allegations tying Wix.com Inc. to the alleged misconduct. Absent factual allegations showing that Wix.com Inc. directly participated in the challenged conduct—or that it acted as an agent or alter ego of Wix.com Ltd.—Plaintiff cannot treat related corporate entities as interchangeable. *See, e.g.*, *Williby v. Hearst Corp.*, No. 5:15-cv-02538-EJD, 2017 U.S. Dist. LEXIS 50755, at *13

- 30 -

(N.D. Cal. Mar. 31, 2017) (granting motion to dismiss where wrong corporate entity was named); *Caravetta v. GEICO*, No. CV-18-0456-TUC-JAS (BGM), 2019 U.S. Dist. LEXIS 125855, at *4 (D. Ariz. July 26, 2019) (same).

## IV.   CONCLUSION

Based on the foregoing, Wix respectfully requests that the Court grant the Motion to Dismiss.

Dated:  April 2, 2026

Kathy Huang
Rachel E. K. Lowe
Tracy Yao
**ALSTON & BIRD LLP**

BY: */s/ Rachel E. K. Lowe*
     RACHEL E. K. LOWE
ATTORNEYS FOR DEFENDANT
**WIX.COM, INC.**

- 31 -

**CERTIFICATE OF SERVICE**

I, Rachel E. K. Lowe, certify and declare as follow:

1. I am over the age of 18 and not a party to this action.

2. My business address is 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

3. On April 2, 2026, I caused a copy of **MOTION TO DISMISS CLASS ACTION COMPLAINT** to be served upon the following counsel via the Court's CM/ECF system:

| | |
|---|---|
| L. Timothy Fisher, Esq.<br>**BURSOR & FISHER, P.A.**<br>1990 North California Blvd., 9th Floor<br>Walnut Creek, CA  94596 | Attorneys for Plaintiff<br>**ABRAHIM MAHALLATI**<br><br>Tel:    (925) 300-4455<br>Fax:    (925) 407-2700<br>Email: ltfisher@bursor.com |
| Julian C. Diamond, Esq.<br>Spencer N. Migotsky, Esq.<br>**BURSOR & FISHER, P.A**.<br>1330 Avenue of the Americas, 32nd Fl.<br>New York, NY  10019 | Attorneys for Plaintiff<br>**ABRAHIM MAHALLATI**<br><br>Tel:    (646) 837-7150<br>Fax:    (212) 989-9163<br>Email: jdiamond@bursor.com<br>          smigotsky@bursor.com |

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct. Executed on April 2, 2026, at Los Angeles, California.

*/s/ Rachel E. K. Lowe*
Rachel E. K. Lowe

- 32 -

Motion to Dismiss Class Action Complaint
3:26-cv-01134-WHO