**DLA PIPER LLP (US)**
ANGELA AGRUSA (SBN 131337)
angela.agrusa@us.dlapiper.com
DAVID FARKAS (SBN 257137)
david.farkas@us.dlapiper.com
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Telephone: 310.595.3000
Facsimile: 310.595.3300

Attorneys for Defendant WIX.COM, LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ABRAHIM MAHALLATI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WIX.COM, LTD.<br><br>Defendant. | Case No. 3:26-cv-01134-WHO<br><br>Assigned to the Honorable William H. Orrick<br><br>**WIX.COM, LTD'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: August 19, 2026<br>Time: 2:00 p.m.<br>Dept.: Courtroom 2, 17th Floor<br><br>FAC Filing Date: April 16, 2026<br>Trial Date: None Set |

**NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 19, 2026, at 2:00 p.m., or as soon thereafter as this matter may be heard, in Courtroom 2 – 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable William H. Orrick, Defendant Wix.com, Ltd. ("Wix" or "Defendant") will and hereby does move to dismiss, with prejudice, the First Amended Complaint ("FAC") (ECF No. 16), generally and as to each cause of action, filed by Abrahim Mahallati ("Plaintiff"), pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). Wix also moves under Federal Rules of Civil Procedure 12(f) to strike Plaintiff's request for an award of attorneys' fees. Wix's motion to dismiss is made on the following grounds:

***First***, Plaintiff's claims for violations of California's False Advertising Law ("FAL") and Unfair Competition Law ("UCL") fail as a matter of law under Rule 12(b)(1) because he lacks Article III standing.

***Second***, Plaintiff's claims for violations of the FAL and UCL fail as a matter of law under Rule 12(b)(6) because they are time-barred under the applicable statutes of limitations.

***Third***, Plaintiff's claims for violations of the FAL and UCL fail as a matter of law under Rule 12(b)(6) because Plaintiff cannot allege inadequate remedies at law.

***Fourth***, Plaintiff's claims for violations of the FAL and UCL fraud prong fail as a matter of law under Rule 12(b)(6) because no reasonable consumer could be misled by Wix's disclosures.

***Fifth***, Plaintiff's claims for violations of the FAL and UCL fraud prong fail as a matter of law under Rule 12(b)(6) because Plaintiff does not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

***Sixth***, Plaintiff's claims for violations of the FAL and UCL fail as a matter of law under Rule 12(b)(6) because Plaintiff does not allege a cognizable injury in fact.

***Seventh***, Plaintiff's claims for violations of the FAL and UCL fail as a matter of law under Rule 12(b)(6) because any injury Plaintiff suffered from the renewal charges was caused by his own

failure to cancel his subscription—not by Wix's representations or practices—and therefore he lacks statutory standing.

***Eighth*,** Plaintiff's FAL and UCL claims fail as a matter of law under Rule 12(b)(6) because Wix's disclosures and actions are consistent with the unambiguous, express provisions in the Terms of Use.

***Ninth***, Plaintiff's claim for violation of the UCL unlawful prong fails as a matter of law under Rule 12(b)(6) because Plaintiff does not allege a predicate violation.

***Tenth*,** Plaintiff's claim for violation of the UCL unfair prong fails as a matter of law under Rule 12(b)(6) because his claim is duplicative of his failed claims under the unlawful and fraudulent prongs and his alleged injury was avoidable.

***Eleventh*,** Plaintiff's claim for injunctive relief fails as a matter of law under Rule 12(b)(6) because Plaintiff fails to plead a likelihood of future injury.

This Motion is based on this Notice, the concurrently filed Memorandum of Points and Authorities, the Declarations of Yuval Boneh and Lidor Zohar Avitan, the concurrently filed Request for Judicial Notice, the pleadings and papers on file in this action, any further evidence and argument that the Court may receive at or before the hearing, all matters of which the Court may take judicial notice, and such other or further material that may be presented at or in connection with the hearing on this Motion.

Dated: July 14, 2026

**DLA PIPER LLP (US)**

By: */s/ David Farkas*
ANGELA C AGRUSA
DAVID FARKAS

ATTORNEYS FOR DEFENDANT
WIX.COM, LTD

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 4

A. Wix Clearly and Conspicuously Discloses its Renewal Terms and Refund Policy at Checkout. .......... 4

B. Wix's Terms of Use Clearly Disclosed Wix's Renewal and Refund Policies. .......... 7

C. Plaintiff's Purchase of Wix's Services. .......... 8

D. Plaintiff was Notified and Affirmatively Assented to the Increased Renewal Price Numerous Times and Never Attempted to Cancel his Subscription. .......... 8

E. Plaintiff's Claims. .......... 9

III. LEGAL STANDARD .......... 10

IV. ARGUMENT .......... 11

A. The Complaint Should Be Dismissed for Lack of Standing Under Rule 12(b)(1). .......... 11

B. The Complaint Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6). .......... 13

1. Plaintiff's Claims Are Time-Barred. .......... 13

2. Plaintiff Fails to Allege Inadequate Remedies at Law. .......... 14

3. Plaintiff's UCL Fraud and FAL Claims Fail Because No Reasonable Consumer Could Be Deceived. .......... 15

4. Plaintiff's UCL Fraud and FAL Claims Fail Because He Does Not Satisfy the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b). .......... 17

5. Plaintiff's Claims Fail Because He Does Not Allege a Cognizable Injury in Fact. .......... 17

6. Plaintiff Lacks Statutory Standing to Sue Under the FAL and UCL. .......... 18

7. Plaintiff's Claims Fail Because Wix's Actions are Consistent with its Unambiguous Terms of Use. .......... 20

8. Plaintiff's UCL Unlawful Claim Fails Because He Does Not Plausibly Allege a Predicate Violation. .......... 21

9. Plaintiff's Bare Recitation of the Statutory Language Is Insufficient to State a Claim Under the UCL Unfair Prong. .......... 21

10. Plaintiff Cannot Obtain Injunctive Relief. .......... 22

C. The Court Should Strike Plaintiff's Request for Attorneys' Fees. ........................................ 23

D. Dismissal Should Be Without Leave to Amend. ................................................................... 23

V. CONCLUSION ........................................................................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvandi v. CVS Pharmacy, Inc.*,
2015 WL 3407899 (C.D. Cal. May 27, 2015) ....................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................10, 13

*Baymiller v. Guarantee Mut. Life Co.*,
No. SA CV 99-1566 DOC AN, 2000 WL 1026565 (C.D. Cal. May 3, 2000) ....................20

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007) ....................13

*Bodenburg v. Apple Inc.*,
No. 23-CV-04409-TLT, 2024 WL 6084050 (N.D. Cal. May 8, 2024), *aff'd*, 146 F.4th 761 (9th Cir. 2025) ....................15, 16, 17, 23

*Brown v. 140 NM LLC, No. 17-CV-05782-JSW*,
2019 WL 2750889 (N.D. Cal. May 20, 2019) ....................19

*In re Cathode Ray Tube (CRT) Antitrust Litig*.,
No. 1917, 2013 WL 6576708 (N.D. Cal. Dec. 13, 2013) ....................4

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................16, 19, 22

*Fabozzi v. StubHub, Inc.*,
No. C-11-4385 EMC, 2012 WL 506330 (N.D. Cal. Feb. 15, 2012) ....................22

*Gill v. Chipotle Mexican Grill, Inc.*,
No. 8:24-CV-01672-FWS-JDE, 2025 WL 1443767 (C.D. Cal. May 19, 2025) ....................2, 14, 15

*Gill v. Marsh USA, Inc.*,
No. 24-CV-02366-RS, 2024 WL 3463351 (N.D. Cal. July 18, 2024) ....................23

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ....................14

*Hadley v. Kellogg Sales Co.*,
243 F.Supp.3d 1074 (N.D. Cal. 2017) ....................21

*Hall v. Time, Inc.*,
158 Cal. App. 4th 847 (2008) ....................18

*Hauck v. Advanced Micro Devices, Inc.*
2019 WL 1493356 (N.D. Cal. Apr. 4, 2019) ....................21

*Herron v. Best Buy Co.*,
924 F. Supp. 2d 1161 (E.D. Cal. 2013) ....................19

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ....................13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................10

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................5

*Kim v. Bluetriton Brands, Inc.*,
2024 WL 243343 (9th Cir. Jan. 23, 2024) ....................15

*Kolar v. Nespresso USA, Inc.*,
No. CV 24-11235-GW-ASX, 2025 WL 1717279 (C.D. Cal. June 13, 2025), *adopted*, No. CV 24-11235-GW-ASX, 2025 WL 1717278 (C.D. Cal. June 16, 2025) ....................11

*Krystofiak v. BellRing Brands, Inc.*,
737 F. Supp. 3d 782 (N.D. Cal. 2024) ....................16

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ....................19

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................5

*Madsen v. Boise State Univ.*,
976 F.2d 1219 (9th Cir. 1992) ....................12

*Martinez v. SAI Long Beach B, Inc.*,
108 Cal. App. 5th 367 (2025) ....................23

*McGee v. S-L Snacks Nat'l*,
982 F.3d 700 (9th Cir. 2020) ....................11, 12

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ....................17

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) ....................15, 16

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ....................13

*Quattrocchi v. Allstate Indem. Co.*,
No. 217CV01578JAMEFB, 2018 WL 347779 (E.D. Cal. Jan. 9, 2018), *aff'd*, 775 F. App'x 330 (9th Cir. 2019) ....................20

*Ramos v. EyeBuyDirect, Inc.*,
No. 8:25-CV-00539-JVS-DFM, 2025 WL 2633103 (C.D. Cal. Aug. 27, 2025) ....................22

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ....................16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................12

*St. Clair v. City of Chico*,
880 F.2d 199 (9th Cir. 1989) ........................................10

*Thomas v. Costco Wholesale Corp.*,
No. 21-55335, 2022 WL 636637 (9th Cir. Mar. 4, 2022)........................................16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................12

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........................................17

*Victor v. R.C. Bigelow, Inc.*,
No. 13-CV-02976-WHO, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014)........................................21

*Warner v. Tinder Inc.*,
105 F. Supp. 3d 1083 (C.D. Cal. 2015) ........................................16, 17, 18, 21

*Williams v. Apple, Inc.*,
449 F. Supp. 3d 892 (N.D. Cal. 2020) ........................................13

*Williamson v. McAfee, Inc.*,
2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) ........................................21

*Wilson v. Household Fin. Corp.*,
No. CIV S-12-1413 KJM AC, 2013 WL 1310589 (E.D. Cal. Mar. 28, 2013)........................................13, 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................ *passim*

Cal. Bus. & Prof. Code § 17208 ........................................13

Cal. Bus. & Prof. Code § 17500 ........................................ *passim*

Cal. Bus. & Prof. Code § 17601(a)(4) ........................................1, 10

Cal. Civ. Code § 338(a) ........................................13

**Other Authorities**

N.D. Cal. Civ. L.R. 7-4(a)(3)........................................ vi

Fed. R. Civ. P. 9(b) ........................................ *passim*

Fed. R. Civ. P. 12(b)(1)........................................ 1, vi, 10, 11

Fed. R. Civ. P. 12(b)(6)........................................ 1, 2, vi, 13

Fed. R. Civ. P. 12(f)........................................1

**CIVIL L.R. 7-4(a)(3) STATEMENT OF ISSUES TO BE DECIDED**

This motion raises the following issues:

1. Whether Plaintiff's Complaint should be dismissed under Rule 12(b)(1) for lack of Article III standing.

2. Whether Plaintiff's claims are time-barred under the applicable statutes of limitations.

3. Whether the Complaint should be dismissed under Rule 12(b)(6) (and Rule 9(b) where applicable) because Plaintiff fails to plead inadequate remedies at law, actual deception, a cognizable injury in fact, and otherwise fails to state claims under the California Unfair Competition Law and California False Advertising Law.

Dated: July 14, 2026

**DLA PIPER LLP (US)**

By: */s/ David Farkas*
ANGELA C AGRUSA
DAVID FARKAS

ATTORNEYS FOR DEFENDANT
WIX.COM, LTD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's First Amended Class Action Complaint ("FAC") fails because Plaintiff admittedly ignored Wix's numerous disclosures explaining its pricing, renewal, cancellation, and refund policies. Wix clearly and conspicuously discloses these policies before any user subscribes, including during the checkout process: (1) directly beneath the "Submit Purchase" button, stating that the user agrees to auto-renewal which can be "disabled at any time"; (2) in five separate locations confirming Wix's "14 Day Money Back Guarantee"; and (3) through a hyperlink to the Terms of Use, which reserves Wix's right to change fees with notice and limits refunds to the first fourteen days after initial purchase. After checkout, Wix emailed Plaintiff confirming his subscription automatically renewed, the renewal price, and how to cancel by disabling auto renewal. Wix also emailed Plaintiff *30 days before* charging him for each subsequent renewal term, notifying him of the upcoming renewal, any price changes, and his ability to cancel before being charged. To the extent Plaintiff challenges Wix's renewal or refund policies, his claims are defeated by the numerous other disclosures he received. Seemingly recognizing that his subscription claims lack merit, Plaintiff voluntarily dropped his claim under California's Automatic Renewal Law ("ARL") from his FAC—leaving only alleged violations of the FAL and UCL.[1] However, these remaining claims also fail.

Plaintiff's Cancellation Theory alleges that because Wix represented users could cancel their subscriptions by disabling auto renewal at "any time," he was entitled to a refund of the entire subscription price whenever he eventually cancelled. But that is not what cancel at "any time" means. The phrase grants a user the right to stop future renewals and terminate future service; it does not confer a right to recover amounts previously paid. A cancellation clause is an exit right, not a refund right. Put simply, cancel "at any time" means stop at any time—not obtain a refund at any time. Under Plaintiff's interpretation, a user could enjoy the subscription for years, cancel on the eve of renewal,

---

[1] Plaintiff purchased the "Premium Plan Business Unlimited" to build a website for his business—not "for personal, family, or household purposes." (FAC ¶ 32.) Accordingly, Plaintiff does not qualify as a "consumer" under California's ARL. Cal. Bus. & Prof. Code § 17601(a)(4). Unable to state a claim under the ARL, Plaintiff now attempts to circumvent this deficiency by asserting meritless claims under California's FAL and UCL.

and demand reimbursement for prior services—transforming the cancellation provision into a retroactive money-back guarantee and converting years of paid use into free use.

Plaintiff's Increased Price Theory fares no better. Plaintiff's own conduct undermines any plausible theory of deception or injury. Before Wix charged Plaintiff for his first renewal at an increased price, Plaintiff *voluntarily* logged into his Wix account and updated his payment information to ensure his subscription continued—demonstrating actual knowledge of, and unambiguous assent to, the renewal terms and price. Plaintiff *repeated* this conduct the following year and continued to use the subscription for a total of *four years*. Only before the *fifth* subscription period was set to renew did Plaintiff finally cancel. Having received the benefit of his bargain for years, Plaintiff cannot now recast his voluntary decision to stop using the service as a basis to recover amounts already paid. The FAC therefore fails as a matter of law, and all claims should be dismissed in their entirety without leave to amend.

***First***, Plaintiff lacks Article III standing because he did not suffer an injury in fact. Plaintiff cannot establish an overpayment injury because Wix explicitly disclosed its renewal terms and refund policy at the time of purchase and sent a reminder 30 days prior to each renewal. Plaintiff was on notice of both challenged policies and affirmatively consented to them. Because these disclosures precluded any reasonable expectation that the service was worth more than he paid, Plaintiff cannot plausibly allege injury in fact. Additionally, Plaintiff's claims relating to Wix's cancellation policy fail because he never actually attempted to cancel his subscription and request a refund; exposure to an allegedly harmful policy is not the same as experiencing harm from it.

***Second*****,** Plaintiff's FAL and UCL claims are time-barred. The FAL and UCL carry three- and four-year statutes of limitations, respectively. Plaintiff was on notice of both challenged policies at the time of his initial purchase on December 27, 2021, and his FAL and UCL claims therefore expired on December 27, 2024, and December 27, 2025, respectively—both before Plaintiff filed suit in February 2026.

***Third*****,** Plaintiff's FAL and UCL claims fail because Plaintiff cannot allege inadequate remedies at law. Plaintiff's allegations regarding the inadequacy of legal remedies are identical to those rejected by this Court's sister court in *Gill v. Chipotle Mexican Grill, Inc.*—a case brought by

Plaintiff's own counsel—and should be dismissed for the same reasons. Plaintiff alleges only that restitution may be governed by a different standard, may yield a different amount, and may be easier to obtain than damages. Those allegations do not plausibly show that damages would be inadequate to make Plaintiff whole.

***Fourth*,** Plaintiff's misrepresentation-based claims under the FAL and UCL fraud prong fail because no reasonable consumer could be misled. Wix never promised static pricing or refunds at any time. To the contrary, Wix's Terms of Use expressly disclosed that Wix reserves the right to change its fees at any time and that refunds are available only within the first fourteen days of initial subscription. Wix's checkout screen reinforced these disclosures, and Wix sent Plaintiff additional notice *30 days before* charging for each renewal. Moreover, no reasonable consumer would understand Wix's statement that users can cancel by disabling auto renewal "at any time" to mean they could receive a refund at any time. Plaintiff's contrary assumption is unreasonable, and unreasonable assumptions do not support a misrepresentation claim.

***Fifth*,** Plaintiff fails to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements because he cannot identify any of Wix's statements that are truly deceptive, nor can he set forth facts showing any statement is false.

***Sixth*,** Plaintiff's FAL and UCL claims fail because he does not allege a cognizable injury in fact. Being induced to purchase a service one would not otherwise have purchased is not a loss of money or property as long as one still receives the benefit of the bargain. Plaintiff received exactly what he bargained for—a functioning website he used for four years without complaint—and does not allege the service was unsatisfactory or worth less than what he paid.

***Seventh*,** Plaintiff lacks statutory standing under the FAL and UCL because any alleged injury Plaintiff suffered from the renewal charges was caused by his own failure to cancel his subscription—not by Wix's representations or practices.

***Eighth*,** Plaintiff's FAL and UCL claims fail because Wix's disclosures and actions are consistent with the unambiguous, express provisions in the Terms of Use.

***Ninth***, Plaintiff's UCL unlawful prong claim fails because he cannot plausibly allege a predicate violation. If Plaintiff cannot state a claim under the FAL—which he cannot—the UCL unlawful claim necessarily fails.

***Tenth***, Plaintiff's UCL unfair prong claim fails because his alleged injury was avoidable and is duplicative of his failed unlawful and fraudulent prong claims.

***Eleventh***, Plaintiff's claims for injunctive relief fail because he cannot demonstrate a likelihood of future injury. Plaintiff cancelled his subscription, is aware of Wix's practices, and does not allege any continuing desire to purchase Wix's services.

***Finally,*** the Court should strike Plaintiff's requests for attorneys' fees from the FAC because they are not available under the UCL or FAL.

Accordingly, the Court should grant this motion and dismiss the FAC in its entirety with prejudice and without leave to amend.

## II. FACTUAL BACKGROUND

### A. Wix Clearly and Conspicuously Discloses its Renewal Terms and Refund Policy at Checkout.

Wix operates a website development platform, Wix.com, that allows users to create and host websites through a subscription-based service model. (FAC ¶ 19.) Wix offers various subscription plans with different features and pricing structures. (*Id.*) As Plaintiff acknowledges, "[w]hen [users] sign up for a subscription, they are presented with ***clearly stated*** pricing terms," including the "subscription price, billing frequency, and duration of the subscription plan." (*Id.* ¶ 21 (emphasis added).) Wix also presents users with its Terms of Use "that governs the terms of the transaction" and users "agree to pay the stated price for the stated term in exchange for access to [Wix's] platform and services."[2] (*Id.* ¶ 22; *see also* Avitan Decl. Ex. C ¶ 1.2 ("[B]y using and/or registering to any of

[2] Wix's operative Terms of Use when Plaintiff purchased his subscription contained a class action waiver. (Avitan Decl. Ex. C ¶ 15.2.) A subsequent version, issued when Plaintiff was a subscriber, added an arbitration provision. Wix expressly reserves the right to move to compel arbitration of some or all of Plaintiff's claims; however, Wix requires further discovery and investigation into Plaintiff's account status with Wix. Wix does not waive, and expressly reserves, the right to compel arbitration at a later stage of these proceedings. *In re Cathode Ray Tube (CRT) Antitrust Litig*., No. 1917, 2013 WL 6576708, at *4 (N.D. Cal. Dec. 13, 2013) ("If a party lacks knowledge of an existing right to arbitrate then even extensive litigation conduct is not inconsistent with its

the Wix Services, you signify and affirm your informed consent to these Terms of Use and any other Wix Terms applicable to your use of any Wix Services.").)[3]

Specifically, to sign up for Wix's services, users must navigate through three webpages to: (i) select a plan; (ii) select the billing frequency; and (iii) complete checkout. (Avitan Decl. ¶ 4.) At the bottom of each of these webpages, Wix discloses that it provides a 14-day money-back guarantee:




(*Id.* ¶ 4, Ex. A.)

After users select their plan and billing frequency, they are taken to the checkout screen, where they must input their payment information and invoice details and click "Submit Purchase" to complete their purchase. (*Id.* ¶ 5.) At the time Plaintiff purchased his subscription for his business—December 27, 2021—Wix disclosed on the checkout screen the total price, any discounts, and directly underneath the "Submit Purchase" button that:

> By purchasing, you accept the Terms of Use and acknowledge reading the Privacy Policy. You also agree to auto renewal of your yearly subscription for $ [dollar amount], which can be disabled at any time through your account. Your card details will be saved for future purchases and subscription renewals.

---

arbitration rights."). Wix's operative Terms of Use when Plaintiff purchased his subscription also included forum-selection and choice-of-law clauses stating that New York is the law and forum to resolve "all claims and disputes related to . . . payment transaction[s]." (Avitan Decl. Ex. C ¶ 15.2.) Wix does not waive, and expressly reserves, the right to file a motion to dismiss for improper venue or a motion to transfer to the appropriate venue.

[3] Plaintiff's FAC references Wix's disclosures on its website and in its Terms of Use throughout, and these documents form the basis of Plaintiff's claims. (*See, e.g.,* FAC ¶¶ 8-9, 19-26, 30, 32-35). Plaintiff, however, submits only portions of these disclosures, depriving the Court of an accurate depiction. Wix therefore submits screenshots of the complete disclosures under the incorporation by reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (holding the incorporation by reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"). Alternatively, Wix's concurrently filed Request for Judicial Notice asks the Court to take judicial notice of the same disclosures. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1053-54 (N.D. Cal. 2025) (taking judicial notice of the defendant's "website," "policies publicly available on that [w]ebsite," and "screens showing the account creation and purchase process").

(*Id.* Ex. B.)

Moreover, Wix disclosed ***three*** times on the checkout screen that Wix only offered a 14-day money back guarantee—at the top and bottom of the webpages and directly underneath the "Submit Purchase" button. (*Id.* Exs. A, B.) Importantly, while Wix provides users 14 days to seek a refund of their initial subscription, Wix provides users "notice prior to the renewal of such Paid Service at least thirty (30) days in advance of the renewal date" to allow users to cancel their subscription prior to being charged for the next renewal term. (*Id.* Ex. C ¶ 5.3.)

**<u>Checkout Screen as of December 27, 2021</u>**




(*Id.* Ex. B.)

**<u>Bottom of Checkout Screen as of December 27, 2021</u>**




(*Id.* Ex. A.)

**B. <u>Wix's Terms of Use Clearly Disclosed Wix's Renewal and Refund Policies.</u>**

The Terms of Use in effect when Plaintiff purchased his subscription—December 27, 2021—govern the pricing, renewal, and cancellation of Wix's subscriptions. (*Id.* Ex. C.) In particular, section 5.1, Paid Services, informs users that:

> Wix reserves the right to change its Fees any time, upon notice to you if such change may affect your existing subscriptions. If you received a discount or other promotional offer, Wix shall have the right to automatically and without notice renew your subscription to such Wix Service(s) at the full applicable Fee.

(*Id.* ¶ 5.1 (emphasis added).)

Section 5.3, Subscription Auto-Renewals, discloses the timing of renewal charges, namely that, "[i]n order to ensure that [users] do not experience any interruption of loss of services" at the end of the subscription period, Wix will automatically renew subscriptions "**unless [the user] <u>turn[s]off</u> the auto-renewal option**." (*Id.* ¶ 5.3 (emphasis in original).) If auto-renewal is not turned off, the subscription will "automatically renew upon the end of the applicable subscription period, for a renewal period equal in time to the original subscription period (excluding extended periods) and, unless otherwise notified to you, at the same price (subject to applicable Taxes changes and excluding any discount or other promotional offer provided for the first period)." (*Id.*) Furthermore, the Terms of Use inform users that Wix "will attempt to automatically charge you the applicable Fees using the Stored Card, within up-to two (2) weeks before such renewal period commences." (*Id*. (emphasis added).) Additionally, the Terms of Use inform users that for "yearly or multiple-year subscription period[s], Wix will endeavor to provide [users] notice prior to the renewal . . . at least thirty (30) days in advance of the renewal date. (*Id.*)

The Terms of Use also separately disclosed Wix's cancellation policy in section 6.1, Cancellation by User: "You may discontinue to use and request to cancel your User Account and/or any Wix Services at any time, in accordance with the instructions available on the Wix Services." (*Id.* ¶ 6.1.) Section 5.4 makes clear that refunds in connection with cancellations are guaranteed only within the first fourteen days of the initial purchase:

> If you are not satisfied with Wix Services that are subject to a Fee for a period of service or subscription commitment and which is your initial purchase of such service, you may provide notice of cancellation for any reason within fourteen (14)

> days **of having first ordered or activated** such Wix Services (the "Refund" and "Refund Period"). **The Refund is applicable only to the initial purchase of Wix services** which is an upgrading of a free website by purchasing a Premium Plan (as offered on the Wix Website). **The Refund is not applicable to any additional purchases, upgrades, modification or renewals of Wix Services**.

(*Id.* ¶ 5.4 (emphasis added).)

**C. <u>Plaintiff's Purchase of Wix's Services.</u>**

On December 27, 2021, Plaintiff signed up for a "Premium Plan Business Unlimited" subscription priced at $324.00 and paid $291.60 after using a coupon for ten percent off. (FAC ¶ 32.) The initial subscription period ran through December 27, 2022. (*Id.*) Plaintiff admits that, at checkout, he was presented with "***clearly stated*** pricing terms," including the "subscription price, billing frequency, and duration of the subscription plan," and that he "agree[d] to pay the stated price for the stated term[s]." (*Id.* ¶¶ 21-22 (emphasis added).) Plaintiff also agreed to Wix's Terms of Use upon signing up and by subsequently using Wix's services. (*See id.* ¶ 22; Avitan Decl. Ex. B ("By purchasing, you accept the <u>Terms of Use</u>."); Ex. C ("[B]y using and/or registering to any of the Wix Services, you signify and affirm your informed consent to these Terms of Use.").)

After Plaintiff purchased his subscription, Wix sent Plaintiff an email with his invoice that informed him of the plan and billing frequency he purchased, that his "subscription [would] automatically renew for USD324.0000 on Dec 13, 2022," and that he could cancel by disabling auto renewal "at any time in [his] account settings." (FAC ¶¶ 33, 35; Boneh Decl. ¶ 3.) Notably, the email informed Plaintiff that his subscription would renew at the full price—$324—as opposed to the discounted price—$291.60—Plaintiff initially paid. (FAC ¶ 33.)

**D. <u>Plaintiff was Notified and Affirmatively Assented to the Increased Renewal Price Numerous Times and Never Attempted to Cancel his Subscription.</u>**

On November 13, 2022—30 days before Wix was scheduled to charge Plaintiff for his ***second*** subscription period—Wix emailed Plaintiff informing him that the yearly price of his plan would increase from $324 to $384, the date Wix would charge his credit card, Wix's rationale for the price increase, and that Plaintiff could cancel his subscription by disabling auto renewal. (Boneh Decl. ¶ 4.) On November 15, 2022, two days after receiving the email from Wix, and prior to Wix

charging Plaintiff, Plaintiff logged into his Wix account and ***voluntarily*** updated the expiration date on his credit card to continue his subscription. (Avitan Decl. ¶ 8.)

On November 13, 2023—30 days before Wix was scheduled to charge Plaintiff for his ***third*** subscription period— Wix emailed Plaintiff identifying the date Wix would charge his credit card for renewal, that the subscription would renew at the same price as the preceding year ($384), and that Plaintiff could cancel his subscription by disabling auto renewal. (Boneh Decl. ¶ 5.) On December 13, 2023, Wix attempted to charge Plaintiff three times, but his payment method failed each time. (Avitan Decl. ¶ 9.) After the failed attempts, Wix emailed Plaintiff to inform him that it was unable to renew his subscription and provided instructions for updating his payment information. (*Id.*) Less than three hours later, Plaintiff logged into his Wix account and ***voluntarily*** updated his payment information to continue his subscription. (*Id.*)

On November 13, 2024—30 days before Wix was scheduled to charge Plaintiff for his fourth subscription period—Wix emailed Plaintiff informing him that the yearly price of his plan would increase from $384 to $432, the date Wix would charge his credit card, Wix's rationale for the price increase, and that Plaintiff could cancel by disabling auto renewal. (Boneh Decl. ¶ 6.) On December 13, 2024, Wix charged Plaintiff $432.00 for his fourth subscription term. (FAC ¶ 35; Avitan Decl. ¶ 10.)

On November 13, 2025—30 days before Wix was scheduled to charge Plaintiff for his fifth subscription period—Wix emailed Plaintiff informing him that the yearly price of his plan would increase, the date Wix would charge his credit card, Wix's rationale for the price increase, and that Plaintiff could cancel his subscription by disabling auto renewal. (Boneh Decl. ¶ 7.) On December 9, 2025, after four years of utilizing Wix's services, and four days before Wix was permitted to charge him for renewal, Plaintiff logged into his Wix account and cancelled his subscription. (Avitan Decl. ¶ 11.)

Less than two months later, Plaintiff filed this lawsuit. (ECF No. 1.)

**E. <u>Plaintiff's Claims.</u>**

On February 5, 2026, Plaintiff filed his initial Class Action Complaint ("CAC") in this action. (ECF No. 1.) Plaintiff's CAC alleged Wix violated the (i) California False Advertising Law ("FAL"),

(ii) California Unfair Competition Law ("UCL"), and (iii) California Automatic Purchase Renewals Statute ("ARL"). (*Id.*) On April 2, 2026, Wix filed a Motion to Dismiss the CAC. (ECF No. 13.) However, on April 16, 2026, prior to the Court ruling on Wix's Motion to Dismiss, Plaintiff filed his FAC. (ECF No. 16.) Plaintiff's FAC dropped the claim for violation of California's ARL, leaving only alleged violations of the FAL and UCL. (*Id.*) Plaintiff alleges Wix violated these statutes by: (i) increasing the price of Plaintiff's subscription without his "affirmative consent" ("Increased Price Theory") and (ii) representing that Plaintiff could "cancel at any time" but limiting refunds to the first 14 days of the initial purchase ("Cancellation Theory"). (*See* FAC ¶ 2.) As explained below, these claims fail as a matter of law.

## III. <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Facts indicating the "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id*. Rather, plaintiffs must "allege more by way of factual content to nudge [their] claim[s] . . . across the line from conceivable to plausible." *Id*. at 683.

Because the FAC is "grounded in fraud," Plaintiff's claims "as a whole" must meet the rigorous standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* at 1126 (citation modified).

On a Rule 12(b)(1) motion, the Court is not limited to the allegations in the complaint, but may "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In a "factual" challenge like this, the Court need "not presume" the truth of the allegations, nor must it draw inferences favorable to Plaintiff. *Alvandi v. CVS Pharmacy, Inc.,* 2015 WL 3407899, at *3 (C.D. Cal. May 27, 2015). Instead, the "party opposing the motion [must] present affidavits or any other evidence necessary to satisfy its burden of establishing . . . subject matter jurisdiction." *St. Clair*, 880 F.2d at 201.

## IV. ARGUMENT

### A. <u>The Complaint Should Be Dismissed for Lack of Standing Under Rule 12(b)(1).</u>

To have Article III Standing, "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705 (9th Cir. 2020). "To establish an injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized." *Id.* At the pleading stage, Plaintiff must "clearly allege facts demonstrating each element of standing." *Id.* (citation modified). Plaintiff fails to do so.

Plaintiff alleges an "overpayment" theory of harm—i.e., Plaintiff contends "he paid more for a [service] than [he] otherwise would have paid." *Kolar v. Nespresso USA, Inc.*, No. CV 24-11235-GW-ASX, 2025 WL 1717279, at *4 (C.D. Cal. June 13, 2025), *adopted*, No. CV 24-11235-GW-ASX, 2025 WL 1717278 (C.D. Cal. June 16, 2025); (FAC ¶ 29.) In alleged false advertising actions, such as this one, a plaintiff generally pleads an overpayment theory of harm by plausibly alleging the service contained "a hidden defect" or "was worth objectively less than what [he or she] paid for it." *McGee*, 982 F.3d at 707. However, "a plaintiff cannot establish an overpayment injury where the [service] at issue 'disclosed' the purported defect at the time of purchase, because they cannot form a reasonable expectation that the [service] was worth more." *Kolar*, 2025 WL 1717279, at *4.

For example, in *McGee*, the plaintiff alleged an overpayment theory—that she paid more for the product than it was worth because the product contained high levels of trans fats. *McGee*, 982 F.3d at 706. However, the Ninth Circuit affirmed dismissal of the claims for lack of Article III standing because the plaintiff did not plausibly allege the defendant "made false representations—or actionable non-disclosures," that the product "contained a hidden defect," or that the product "was worth objectively less than what she paid for it." *Id.* at 707. The plaintiff could not do so because the defendant explicitly "disclosed the presence of artificial trans-fat" on the product label and the plaintiff did not otherwise allege the labels were misleading; therefore, it was implausible that the plaintiff could have purchased a product worth less than expected. *Id.* at 705, 707.

The same reasoning applies here. Plaintiff cannot establish an overpayment theory of harm because he cannot plausibly allege Wix made any false representations or actionable omissions and

Plaintiff does not otherwise allege Wix's other disclosures were misleading. Like in *McGee*, Plaintiff was on notice of both challenged policies—Wix's right to increase subscription prices and its refund policy—at the time of purchase. When signing up for an account, Wix informed Plaintiff that "[b]y purchasing, you accept the Terms of Use," with a hyperlink to those terms. (Avitan Decl. Ex. B.) The Terms of Use explicitly stated that Wix "reserve[d] the right to change its Fees at any time, upon notice to you," and that refunds were available only within the first 14 days of the initial purchase. (*Id.* Ex. C ¶¶ 5.1, 5.4, 6.1.) Wix's checkout process reinforced this disclosure: it informed Plaintiff he could cancel by disabling auto renewal "at any time" while also stating ***five*** times that Wix offered only a 14 Day Money Back Guarantee. (*Id.* ¶ 4, Exs. A, B.) Moreover, Wix provided Plaintiff notice of any price increases, and his ability to cancel his subscription, 30 days before ***each renewal charge*** and he ***voluntarily*** updated his payment information on ***two separate occasions*** to continue his subscription (Boneh Decl. ¶¶ 4-7; Avitan Decl. ¶¶ 8-9)—demonstrating knowledge and unambiguous, affirmative consent to the increased price. Accordingly, Wix explicitly disclosed its terms to Plaintiff, with ample notice and time, Plaintiff affirmatively consented to the price, and therefore it is implausible Plaintiff could have purchased a service worth less than expected.

As a separate ground for dismissal, Plaintiff's Cancellation Theory also fails because he was not "*concretely harmed*" by the alleged statutory violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Plaintiff lacks standing to pursue these claims because he never alleges that he actually attempted to cancel his subscription and was denied a refund. At most, he alleges that he "had no ability to cancel his subscription with a refund" (FAC ¶ 37)—a hypothetical inability, not an actual injury. Article III requires an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). In *TransUnion LLC*, the Supreme Court held that class members whose credit files contained inaccurate OFAC alerts lacked standing where those files were never disseminated to third parties because the mechanism of harm was never activated. 594 U.S. at 435. The same logic applies here: Plaintiff was subject to a cancellation policy that limited refunds, but because he never attempted to cancel, the mechanism by which the policy would injure him was never triggered. Exposure to an allegedly harmful policy is not the same as experiencing harm from it. *Madsen v. Boise State Univ.*, 976 F.2d

1219, 1220 (9th Cir. 1992) ("There is a long line of cases . . . that hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit.") (collecting cases).

### B. **The Complaint Should Be Dismissed for Failure to State a Claim Under Rule 12(b)(6).**

Plaintiff fails to state a cognizable claim under the UCL or FAL. Rule 12(b)(6) requires Plaintiff "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Dismissal is proper . . . where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

#### 1. Plaintiff's Claims Are Time-Barred.

Plaintiff's FAL and UCL claims are time-barred. The FAL carries a three-year statute of limitations, *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912 (N.D. Cal. 2020) (citing Cal. Civ. Code § 338(a)), and the UCL carries a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. For fraud-based claims, the claims accrue when the plaintiff "discovers, or has reason to discover, the cause of action." *Wilson v. Household Fin. Corp.*, No. CIV S-12-1413 KJM AC, 2013 WL 1310589, at *3 (E.D. Cal. Mar. 28, 2013). Plaintiff "need not be aware of the specific facts necessary to establish the claim," a "suspicion of wrongdoing" suffices. *Id.* And Plaintiff is charged with "knowledge that could reasonably be discovered through investigation of sources open to h[im]." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988). "So long as a suspicion exists, . . . the plaintiff must go find the facts; []he cannot wait for the facts to find h[im]." *Wilson*, 2013 WL 1310589, at *3 (quoting *Jolly*, 44 Cal. 3d at 1111).

As established above, Plaintiff was on notice of both challenged policies—Wix's right to increase subscription prices and its refund policy—at the time of sign-up and purchase. Wix informed Plaintiff that "[b]y purchasing, you accept the Terms of Use," with a hyperlink to those terms. (Avitan Decl. Ex. B.) The Terms explicitly stated that Wix "reserve[d] the right to change its Fees at any time, upon notice to you," and that refunds were available only within the first 14 days

of the initial purchase. (*Id.* Ex. C ¶¶ 5.1, 5.4.) Wix's website reinforced this disclosure: it informed Plaintiff he could cancel by disabling auto-renewal "at any time" while also stating—in ***five*** separate locations—that Wix offers only a 14 Day Money Back Guarantee. (*Id.* ¶ 4, Exs. A, B.) Plaintiff admits he agreed to these terms. (FAC ¶¶ 21-22.) He does not allege Wix misrepresented, withheld, or prevented him from reading them. *Wilson*, 2013 WL 1310589, at *4. Nor does it matter whether he actually read them: "Reasonable diligence requires the reading of a contract before signing it," and users are "expected to be prudent in their business transactions." *Id.* Plaintiff's FAL and UCL claims therefore accrued on December 27, 2021, and the limitations period expired on December 27, 2024, and December 27, 2025, respectively, which is before he filed suit in February 2026. Plaintiff's FAL and UCL claims are therefore time-barred as to both the Price Increase and Cancellation Theories.[4]

**2. Plaintiff Fails to Allege Inadequate Remedies at Law.**

"A plaintiff seeking equitable relief must sufficiently allege that remedies at law are inadequate." *Gill v. Chipotle Mexican Grill, Inc.*, No. 8:24-CV-01672-FWS-JDE, 2025 WL 1443767, at *4 (C.D. Cal. May 19, 2025) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-44 (9th Cir. 2020) and *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1311-15 (9th Cir. 2022)). Courts therefore "generally require plaintiffs seeking equitable relief to allege some facts suggesting that damages are insufficient to make them whole." *Id.*

In *Gill*, the plaintiffs—represented by Plaintiff's counsel here—asserted the same theory Plaintiff advances in support of his UCL and FAL claims. They alleged that legal remedies were inadequate because: (1) restitution is governed by a different standard than damages and therefore may be available even if damages are not; (2) restitution may exceed damages because it may include profits from the alleged wrongdoing; and (3) the claims are easier to prove because they require fewer elements. *Id.* at *5. The court rejected those allegations and dismissed the equitable claims. It characterized the theory as an assertion that "restitution could be higher or easier to obtain than damages," and held that although the plaintiffs alleged that restitution might include profits and

[4] Even under the most favorable reading—that Plaintiff first became aware of the price increase when he was charged in December 2022 (FAC ¶ 34)—his FAL claim still expired in December 2025, two months before he filed this action.

therefore exceed legal damages, this was "insufficient support in the record for the notion that legal damages are insufficient to make plaintiffs whole." *Id.* (citation modified).

Plaintiff's allegations regarding the inadequacy of legal remedies for his UCL and FAL claims are ***identical*** to those rejected in *Gill* and should be dismissed for the same reasons. Plaintiff alleges only that restitution may be governed by a different standard, may yield a different amount, and may be easier to obtain than damages. (FAC ¶¶ 58, 79.) Those allegations do not plausibly show that damages would be inadequate to make Plaintiff whole. Plaintiff's UCL and FAL claims should therefore be dismissed.

**3. Plaintiff's UCL Fraud and FAL Claims Fail Because No Reasonable Consumer Could Be Deceived.**

Plaintiff's misrepresentation claims under the UCL fraud prong and FAL are governed by the "reasonable consumer" standard. *See Kim v. Bluetriton Brands, Inc.*, 2024 WL 243343, at *1 (9th Cir. Jan. 23, 2024) (applying reasonable consumer test to UCL fraud prong and FAL claims). The reasonable consumer standard requires Plaintiff plausibly allege "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). Plaintiff cannot meet this standard for both his Price Increase and Cancellation Theories.

***First***, no reasonable user could be misled by Wix's increased renewal prices because Wix never promised static pricing or refunds at any time. To the contrary, Wix's Terms of Use—which Plaintiff admits he agreed to (FAC ¶ 22)—expressly disclosed that Wix "reserves the right to change its Fees at any time, upon notice to you" and that Wix only provides refunds "within fourteen (14) days of having first ordered or activated such . . . Services." (Avitan Decl. Ex. C ¶¶ 5.1, 5.4.) Additionally, Wix's checkout process on its website stated ***five*** times that it offers only a 14-day money-back guarantee (*id.* ¶ 4, Exs. A, B.), and Wix sent Plaintiff additional notice of the price increase 30 days before charging him for renewal. (Boneh Decl. ¶¶ 4-7.) "In light of th[ese] [disclosures], it is simply not plausible that a significant portion of the general consuming public or of targeted [users], acting reasonably in the circumstances, could be misled." *Bodenburg v. Apple Inc.*, 146 F.4th 761, 769 (9th Cir. 2025) (citation modified). Indeed, courts routinely dismiss claims

where plaintiffs fail to identify an actual misleading statement or where explicit disclosures contradict a plaintiff's idiosyncratic interpretation. *See Bodenburg v. Apple Inc.,* No. 23-CV-04409-TLT, 2024 WL 6084050, at *2 (N.D. Cal. May 8, 2024), *aff'd*, 146 F.4th 761 (9th Cir. 2025) (holding that plaintiff's "subjective" interpretation was insufficient to satisfy the reasonable consumer test because the "plans and pricing information explicitly state[d] the amount of GB provided upon upgrading to a paid plan"); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (dismissing FAL and UCL claims because the plaintiff did not identify "any statements that were actually false" and the "advertisement's legible disclaimer" informed users of the alleged misleading annual fee); *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1093 (C.D. Cal. 2015) (dismissing FAL and UCL claims because the plaintiff failed to identify any statements suggesting the "benefit . . . would 'always' be free"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 968 (S.D. Cal. 2012) (dismissing an FAL claim where "Sony never represented that the PSPs and PS3s would 'always' be able to access the internet and/or connect to other online services").

***Second***, even without Wix's numerous disclosures, no reasonable user would understand Wix's statement that users can cancel "at any time" to mean they could *receive a refund* at any time. Plaintiff alleges he was misled because he purchased his subscription under the "common sense ***assumption*** that cancelling the subscription at any time would entail a refund." (FAC ¶ 69 (emphasis added).) But this assumption is unreasonable, and "unreasonable assumptions do not support a misrepresentation claim" under the UCL or FAL. *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 799 (N.D. Cal. 2024) (citing *Thomas v. Costco Wholesale Corp.*, No. 21-55335, 2022 WL 636637, at *2 (9th Cir. Mar. 4, 2022) and *Moore*, 4 F.4th at 883). Plaintiff's assumption rests on a false equivalence between the ability to cancel at any time and the right to receive a refund at any time. However, as explained above, a cancellation clause is an exit right, not a refund right. Put simply, cancel "at any time" means stop at any time—not obtain a refund at any time. Moreover, the alleged misleading statement says nothing about refunds, and Plaintiff cannot identify any statement promising refunds at any time. Plaintiff's own allegations confirm as much: he alleges Wix represented its "services would be cancelable at any time" but, critically, does not—and cannot—allege that Wix promised cancellation *with a refund* at any time. (FAC ¶ 52.)

Moreover, this made-up harm is further attenuated by the fact that Plaintiff—after receiving a full 30 days to decide whether to renew or not renew and pay or not pay the stated renewal price—never sought a refund. This is perhaps because he knew and understood the refund policy and realized that he was outside of the policy. He was not misled; he just does not like the policy. This is not a valid basis for a lawsuit and defeats Plaintiff's UCL fraud and FAL claims because no reasonable user could be misled.

**4. Plaintiff's UCL Fraud and FAL Claims Fail Because He Does Not Satisfy the Heightened Pleading Requirements of Fed. R. Civ. P. 9(b).**

"Because [Plaintiff's] consumer protection claims are based on [Wix's] alleged fraudulent business practices, these claims must also satisfy the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b)." *Bodenburg*, 146 F.4th at 771. "Rule 9(b) requires that parties state with particularity the circumstances constituting fraud or mistake, . . . including the who, what, when, where, and how of the misconduct charged." *Id.* (citation modified). To satisfy this standard, Plaintiff "must set forth what is false or misleading about the defendant's statements, and why they are false." *Id.* (citation modified).

Plaintiff's claims fail to satisfy Rule 9(b) for the same reasons they fail the reasonable consumer test: Plaintiff cannot identify any of Wix's statements "that are truly deceptive." *Id.* And while Plaintiff characterizes Wix's pricing and cancellation disclosures as "ambiguous and misleading," Plaintiff "cannot set forth facts showing these statements are false." *Id.* Accordingly, Plaintiff's claims therefore cannot satisfy Rule 9(b). *Id.*; *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("[M]ere conclusory allegations of fraud are insufficient."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (dismissing claim under Rule 9(b) where plaintiff "d[id] not identify any specific misrepresentations").

**5. Plaintiff's Claims Fail Because He Does Not Allege a Cognizable Injury in Fact.**

Remedies under the UCL and FAL are limited to restitution and injunctive relief. *Warner*, 105 F. Supp. 3d at 1091. Restitution requires proof that the plaintiff lost "money as a result of" the violation. *Id.* at 1094. Plaintiff seeks "full restitution of all funds acquired from Plaintiff . . . from the

sale of subscription services." (FAC at Prayer for Relief ¶ (e).) Yet Plaintiff alleges only in conclusory fashion that "as a direct and proximate result" of Wix's advertising, he "suffered an injury in fact and . . . lost money or property, time, and attention." (FAC ¶ 54.) Plaintiff further alleges that "[i]f not for Defendant's deceptive billing practices, [users] would not have purchased or subscribed to said services, would have cancelled their subscriptions, or would have chosen to purchase services from a competitor." (FAC ¶ 6.)

These allegations fail to state a cognizable injury. Courts routinely hold that "being induced to purchase a [service] one would not otherwise have purchased is not loss of money or property within the meaning of the statute as long as one still receives the benefit of the bargain." *Warner*, 105 F. Supp. 3d at 1094. In *Warner*, the plaintiff alleged that Tinder violated the FAL and UCL by advertising a $2.99 monthly subscription and then unilaterally increasing the price after he subscribed. *Id.* at 1032. The court held the plaintiff failed to allege a cognizable injury because he did not claim that "he did not want" the subscription, that the subscription "was unsatisfactory," or that it "was worth less than what he paid for it." *Id.*

The same reasoning applies here. Plaintiff suffered no harm because he received exactly what he bargained for—a functioning website he used for ***four years*** without complaint. Plaintiff "does not allege that he did not want [the subscription], that [the subscription] was unsatisfactory, or that [the service] was worth less than what he paid for" and thus "has not pled that he suffered a loss capable of restitution under the FAL or UCL." *Id.* at 1094-95; *see also Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 854–55 (2008) (holding the plaintiff lacked standing because, though he had "expended" money, he had not "lost" money; "[h]e did not allege he did not want the book, the book was unsatisfactory, or the book was worth less than what he paid for it"). To the contrary, Plaintiff utilized Wix's "business" plan for multiple years (FAC ¶ 32) and presumably benefited from it.

**6. Plaintiff Lacks Statutory Standing to Sue Under the FAL and UCL.**

Plaintiff lacks statutory standing to sue under the FAL and UCL because his alleged injuries were not caused by Wix's conduct. To bring a claim under the UCL and FAL, a plaintiff must "show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false

advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

As to the Increased Pricing Theory, any injury Plaintiff allegedly suffered from the 2022 renewal charge was caused by his own decision not cancel his subscription, not Wix's representations or practices. As Plaintiff acknowledges, Wix informed him "when he first purchased a subscription" that he could cancel by disabling auto renewal "at any time." (FAC ¶ 35.) Furthermore, Wix's disclosures during the checkout process and in its Terms of Use, which Plaintiff had notice of and agreed to at the time of purchase and after, clearly informed Plaintiff that subscriptions will automatically renew unless they disable auto-renew. (*Id.* ¶¶ 21-23; Avitan Decl. Exs. A-C). Plaintiff could have cancelled at any time prior to being charged on December 13, 2022 and he would not have been charged the increased price for renewal. Accordingly, because the alleged harm was caused by his decision not to act, Plaintiff has not plausibly alleged a cognizable injury sufficient to confer statutory standing on the pricing theory. *See Davis*, 691 F.3d at 1170 ("Because [the plaintiff] failed to read the terms and conditions before agreeing to them, and because he refused to cancel his card within 90 days, . . . we must conclude that any harm he suffered *was the product of his own behavior*, not the advertisements.") (emphasis added); *see also Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1178 (E.D. Cal. 2013) ("Since Plaintiff refused to return his Laptop for a full refund, his harm was avoidable, and likely any harm he suffered was the product of his own behavior, rather than Best Buy's actions.") (citation modified).

The Cancellation Theory fares no better. Plaintiff alleges that Wix's representation that he could cancel by disabling auto renewal "at any time" induced him to purchase the subscription. (FAC ¶¶ 35-36, 69.) However, as explained above, Plaintiff does not allege that he ever attempted to cancel his subscription, let alone that Wix's cancellation policy prevented him from doing so. Without any allegation that Plaintiff acted—or attempted to act—on the cancellation representation, he cannot establish that the allegedly false representation caused his injury. *See Brown v. 140 NM LLC, No. 17-CV-05782-JSW,* 2019 WL 2750889, at *2 n.2 (N.D. Cal. May 20, 2019) (holding to have standing under the UCL the plaintiff must show "a causal connection between the defendant's alleged UCL violation and the plaintiff's injury in fact"). Plaintiff's theory amounts to an assertion that he would

not have subscribed had he known the true cancellation terms—but because Plaintiff never tried to cancel, the cancellation policy played no causal role in any harm he experienced.

**7. Plaintiff's Claims Fail Because Wix's Actions are Consistent with its Unambiguous Terms of Use.**

Courts routinely dismiss UCL or FAL claims "where the defendant has followed the express language of unambiguous provisions from . . . contracts." *Quattrocchi v. Allstate Indem. Co.*, No. 217CV01578JAMEFB, 2018 WL 347779, at *3 (E.D. Cal. Jan. 9, 2018), *aff'd*, 775 F. App'x 330 (9th Cir. 2019). For example, in *Quattrocchi*, the plaintiff alleged an insurance provider violated the UCL by declining coverage for his medical bills. *Id.* at *1-2. The insurer declined payment because the plaintiff failed to provide the requisite proof of loss and a primary medical plan had paid for his treatment. *Id.* at *2. The court dismissed the UCL claim because the insurer's denial was consistent with the "express language of unambiguous provisions from" the insurance policy. *Id.* at *3.

The same reasoning applies here. Plaintiff alleges Wix violated the UCL and FAL by charging an increased price at renewal and providing refunds only within 14 days of the initial purchase. But, like in *Quattrocchi*, Wix's actions are consistent with the unambiguous, express language of its website disclosures and Terms of Use. Wix's Terms of Use expressly disclosed that: (i) "Wix reserves the right to change its Fees any time, upon notice to you" (Ex. C ¶ 5.1) and (ii) users "may provide notice of cancellation for any reason within fourteen (14) days of having first ordered or activated such Wix Services" and that "[t]he Refund is applicable only to the initial purchase of Wix services." (*Id.* ¶ 5.4.) Moreover, Wix disclosed ***five*** times during the checkout process that it provided only a 14-day money-back guarantee. (*Id.* Exs. A, B.) Accordingly, "there is no plausible basis for finding that [Wix] violated the UCL" because "there is no language in the [Terms of Use] that creates ambiguity . . . in this situation" and Wix "followed the explicit language of the [Terms of Use]." *Id.* at *3; *see also Baymiller v. Guarantee Mut. Life Co.,* No. SA CV 99-1566 DOC AN, 2000 WL 1026565, at *4 (C.D. Cal. May 3, 2000) (dismissing UCL claim where the alleged misrepresentations regarding insurance charges and premiums were consistent with the express language of the applicable insurance policies).

**8. Plaintiff's UCL Unlawful Claim Fails Because He Does Not Plausibly Allege a Predicate Violation.**

To plead a claim under the UCL unlawful prong, Plaintiff must plausibly allege a violation of another law. "If a plaintiff cannot state a claim under the predicate law," then this prong "also fails." *Hadley v. Kellogg Sales Co.*, 243 F.Supp.3d 1074, 1094 (N.D. Cal. 2017). Here, Plaintiff alleges Wix violated the UCL unlawful prong because it violated the FAL. (FAC ¶ 73.) However, as established above, Plaintiff fails to plausibly allege Wix violated the FAL and, therefore, Plaintiff's claim under the UCL unlawful prong also fails. *See Hadley,* 243 F. Supp. 3d at 1094 (dismissing UCL unlawful claim because the plaintiff "inadequately alleged a violation of the [predicate] FAL" claim); *Warner,* 105 F. Supp. 3d at 1095 (same).

**9. Plaintiff's Bare Recitation of the Statutory Language Is Insufficient to State a Claim Under the UCL Unfair Prong.**

The UCL's "unfair" prong requires the practice "either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Williamson v. McAfee, Inc*., 2014 WL 4220824, at *6 (N.D. Cal. Aug. 22, 2014) (citations omitted). Plaintiff fails to sufficiently plead such claims.

***First***, Plaintiff's unfair claim fails because it is entirely duplicative of the failed claims under the unlawful and fraudulent prongs. Courts in this district consistently dismiss unfair claims where, as here, the alleged unfair practices "overlap entirely with the business practices addressed in the fraudulent and unlawful prongs" that "do not survive." *Hadley*, 243 F. Supp. 3d at 1105 (collecting cases); *see also Hauck v. Advanced Micro Devices, Inc.* 2019 WL 1493356, at *15 (N.D. Cal. Apr. 4, 2019) (dismissing UCL unfair claim because it was based on same "allegedly fraudulent omissions" as dismissed fraud claim).

***Second***, Plaintiff's UCL unfair claim also fails because Plaintiff fails to offer any supporting facts for the legal conclusion that Wix's actions "offend public policy." (FAC ¶ 63); *see Williamson*, 2014 WL 4220824, at *7 (dismissing unfair claim because plaintiff did not "include[] allegations that go towards comparing the harm to consumers against the utility of the [d]efendant's conduct"); *Victor v. R.C. Bigelow, Inc.,* No. 13-CV-02976-WHO, 2014 WL 1028881, at *18 (N.D. Cal. Mar. 14, 2014)

(dismissing unfair claim because plaintiff "fails to explain how [the defendant's] labels offend an established public policy" despite alleged regulatory violations).

***Third***, Plaintiff's UCL unfair claim fails because Plaintiff's alleged injury—payment of his subscription—was reasonably avoidable. As established above, Plaintiff was on notice of Wix's increased pricing and cancellation policies and could have avoided any subsequent charges had he cancelled by disabling auto renewal when notified of the increased price *30 days prior* to the date Wix was scheduled to charge him. Courts routinely dismiss claims under the UCL unfair prong when the "harm he suffered was the product of his own behavior." *Davis*, 691 F.3d at 1170 (affirming dismissal of UCL unfair claim because the plaintiff failed to read the terms and conditions and refused to cancel his credit card to avoid a fee within 90 days); *Fabozzi v. StubHub, Inc.*, No. C-11-4385 EMC, 2012 WL 506330, at *8 (N.D. Cal. Feb. 15, 2012) (dismissing UCL unfair claim because "any consumer who wanted to avoid paying more than face value could simply have looked at the established prices on the venue's website").

**10. Plaintiff Cannot Obtain Injunctive Relief.**

Plaintiff's claims for injunctive relief are barred because there is "no likelihood of future injury." *Ramos v. EyeBuyDirect, Inc.*, No. 8:25-CV-00539-JVS-DFM, 2025 WL 2633103, at *12 (C.D. Cal. Aug. 27, 2025). To establish a likelihood of future harm, Plaintiff must demonstrate he is "realistically threatened by a repetition of the violation." *Id.* "Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury." *Id.* Plaintiff's sole allegation as to future injury reads: the "advertising . . . presents a continuing threat to Plaintiff and the Class Members in that Defendant persists and continues to engage in these practices and will not cease doing so unless and until forced to do so by this Court." (FAC ¶ 57.) This conclusory allegation is insufficient on its face. Moreover, these allegations are insufficient because Plaintiff does not allege he has any "continuing . . . desire to purchase" the [service] and he is "now aware of the" alleged misleading practices, "the ability to opt-out," and therefore "does not risk being harmed . . . again." *Ramos*, 2025 WL 2633103, at *12.

**C. The Court Should Strike Plaintiff's Request for Attorneys' Fees.**

Plaintiff's FAC seeks to recover "costs and reasonable attorneys' fees." (FAC ¶ 12; *see also* Prayer for Relief(f) ("All reasonable and necessary attorneys' fees and costs"). However, attorneys' fees are not available under the UCL or FAL, and therefore these allegations should be stricken from the FAC. *See Gill v. Marsh USA, Inc.*, No. 24-CV-02366-RS, 2024 WL 3463351, at *7 (N.D. Cal. July 18, 2024) (granting motion to strike the plaintiff's request for attorneys' fees because "attorney fees . . . are not available under the UCL"); *Martinez v. SAI Long Beach B, Inc.*, 108 Cal. App. 5th 367, 374 (2025) ("The UCL and false advertising law do not provide for attorney fees to a prevailing party.")

**D. Dismissal Should Be Without Leave to Amend.**

The Court should dismiss Plaintiff's FAC without leave to amend because there are no facts that Plaintiff can add to show that he has Article III standing, that his claims are timely, that a reasonable consumer would be misled, or that he has an inadequate legal remedy at law, among numerous other futile deficiencies. *Bodenburg*, 146 F.4th at 767 (affirming dismissal without leave to amend because "there were no facts that [the plaintiff] could plead to remedy these deficiencies").

## V. CONCLUSION

For the foregoing reasons, Wix respectfully requests the Court grant its Motion and dismiss the FAC without leave to amend.

Dated: July 14, 2026

**DLA PIPER LLP (US)**

By: */s/ David Farkas*
ANGELA C AGRUSA
DAVID FARKAS

ATTORNEYS FOR DEFENDANT
WIX.COM, LTD