UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

| | |
|---|---|
| ABRAHIM MAHALLATI,<br>Plaintiff,<br>v.<br>WIX.COM LTD.,<br>Defendant. | Case No. 26-cv-01134-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 32 |

In this putative class action, plaintiff Abrahim Mahallati ("Mahallati") challenges defendant Wix.com, Ltd.'s ("Wix") alleged practice of overcharging customers for its subscription services, as well as representing that customers could cancel their subscriptions "at any time," while ultimately refusing to provide refunds. Wix moves to dismiss Mahallati's claims for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and (6). As pleaded, Mahallati's theories of injury are belied by the representations on Wix's checkout screen on its website and its Terms of Use, and he lacks standing as a result. For the reasons stated below, Wix's motion to dismiss is GRANTED with leave to amend.

## BACKGROUND

Wix is a Delaware corporation engaged in the "development, marketing, and sale of website subscription services." Amended Complaint ("Compl.") [Dkt. No. 16] ¶ 15. It operates the website Wix.com, which "allows users to create and host websites through a subscription-based service model." *Id.* ¶ 19. It derives "substantial revenue" from subscriptions charged to its users. *Id.* ¶ 20. To attract new subscribers, it "prominently advertises specific subscription prices and terms on its website and in marketing materials, inducing consumers to sign up based on these represented terms." *Id.* Upon signing up for a subscription, consumers are presented with "clearly

stated pricing terms," including the "subscription price, billing frequency, and duration of the subscription plan the consumer selects." *Id.* ¶ 21. Believing this subscription agreement governs the terms of the transaction, consumers "agree to pay the stated price for the stated term in exchange for access to [Wix's] platform and services." *Id.* ¶ 22.

Mahallati alleges that after entering the subscription agreement, Wix "unilaterally modifie[d] the material terms of those agreements to its own benefit and to the detriment of its subscribers." *Id.* ¶ 23. Its conduct included increasing renewal prices "above the originally agreed rate without obtaining affirmative consent from affected subscribers." *Id.* ¶¶ 23–24. Wix also "falsely represented to new customers that they could cancel their subscription at any time," but only permitted users to cancel a subscription "within 14 days of the *first* time a user makes a purchase and does not apply to automatic subscription renewals." *Id.* ¶¶ 25–26. Finally, Wix charges users for automatic renewals "weeks before a new subscription period begins," locking customers out of a refund for canceled subscriptions. *Id.* ¶ 27. Taken together, Mahallati alleges that users are "habitually charged for vastly more than what they agreed to pay with no real ability to cancel their account and receive a refund once they realize that [Wix] unilaterally changed the terms of their agreement." *Id.* ¶ 28.

Mahallati states that he is a victim of this fraudulent practice. *See id.* ¶¶ 29–38. He signed up for a subscription service on Wix.com in December 2021, paying "$291.60 . . . for the billing period of December 27, 2021 through December 27, 2022." *Id.* ¶¶ 30, 32. At the time of purchase, he received an email indicating that his subscription would "automatically renew for USD324.00 on Dec 13, 2022." *Id.* ¶ 33. Despite this email confirmation, he was ultimately charged $384.00—a $60.00 price increase—on December 13, 2022. *Id.* ¶ 34. While Mahallati was "informed in writing that he could 'disable auto-renewal or cancel [his] subscription at any time in [his] account settings,'" he alleges that such representations were "highly misleading," as "users are only permitted to cancel with a refund within 14 days of the first time that user makes a purchase." *Id.* ¶¶ 35–36. Therefore, once he was charged on December 23, 2022, he alleges that he lacked the ability to cancel his subscription with a refund. *Id.* ¶ 37.

Plaintiff filed this putative class action on February 5, 2026, seeking to represent:

> All consumers, who, between the applicable statute of limitations and the present, purchased one or more subscriptions in the State of California, and who were overcharged with respect to their original subscription without their authorization by Defendant.

*Id.* ¶ 39. The complaint raises two causes of action: (1) violation of California's False Advertising Act ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, *see id.* ¶¶ 48 –59; and (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, *see id.* ¶¶ 60–80.

On July 14, 2026, Wix moved to dismiss the complaint. *See* Wix.com's Motion to Dismiss ("Mot.") [Dkt. No. 32]. Mahallati filed an opposition on August 28, 2026. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss ("Oppo.") [Dkt. No. 37]. Wix replied. *See* Reply in Support of Wix.com's Motion to Dismiss ("Repl.") [Dkt. No. 38]. I heard oral argument on September 30, 2026.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to

amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I. ARTICLE III STANDING**

"To satisfy Article III's case or controversy requirement, a plaintiff must establish that she has standing to invoke the jurisdiction of federal courts." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1142 (9th Cir. 2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). To do so, a plaintiff "must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Mahallati asserts two theories of injury: (1) an overpayment theory, based on Wix's allegedly false representation that his subscription would renew for $324 when it instead charged him $384; and (2) a cancellation theory, based on Wix's allegedly misleading representation that Mahallati could cancel his subscription "at any time" when in reality refunds were only offered within the first 14 days after purchase. Neither theory is adequately pleaded.

**A. Overpayment Theory**

In false advertising cases, the Ninth Circuit has held that where plaintiffs "contend that they paid more for a product than they otherwise would have paid or bought it when they otherwise would not have done so[,] they have suffered an Article III injury in fact." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1145 (9th Cir. 2024) (internal quotation marks and brackets omitted); *see also McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("[O]verpayment is a viable theory of economic injury. We have consistently recognized that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a product than

she otherwise would have due to a defendant's false representations about the product."). The Ninth Circuit has not decided "whether, in the absence of a misrepresentation, an overpayment theory of economic injury is viable." *McGee*, 982 F.3d at 707. "But a plaintiff cannot establish an overpayment injury where the product at issue 'disclosed' the purported defect at the time of purchase, because they cannot form a reasonable expectation that the product was worth more." *Kolar v. Nespresso USA, Inc.*, No. CV 24-11235-GW-ASx, 2025 WL 1717279, at *4 (C.D. Cal. June 13, 2025) (citing *McGee*, 982 F.3d at 707–08).

Wix argues that Mahallati failed to establish an overpayment theory of harm as he "cannot plausibly allege Wix made any false representations or actionable omissions and [Mahallati] does not otherwise allege Wix's other disclosures were misleading." Mot. at 11–12. To make this point, Wix contends that Mahallati presents an incomplete and inaccurate view of the Website and the representations it made to consumers. *Id.* at 4–8. For example, Wix highlights how at the time of Mahallati's purchase, Wix disclosed on the checkout screen that:

> By purchasing, you accept the Terms of Use and acknowledge reading the Privacy Policy. You also agree to auto renewal of your yearly subscription for $ [dollar amount], which can be disabled at any time through your account. Your card details will be saved for future purchases and subscription renewals.

*Id.* at 5–6; *see* Declaration of Lidor Zohar Avitan in Support of Motion to Dismiss ("Avitan Decl.") [Dkt. No. 32-1] Ex. B (December 27, 2021 checkout screen). Moreover, Wix points out that it "disclosed *three* times on the checkout screen that Wix only offered a 14-day money back guarantee—at the top and bottom of the webpages and directly underneath the 'Submit Purchase' button."






*Id.* at 6.

Wix similarly notes that the Terms of Use in effect when Mahallati purchased his subscription "clearly disclosed Wix's renewal and refund policies." *Id.* at 7. Specifically, section 5.1 of the Terms of Use, titled "Paid Services," informs customers that:

> Wix reserves the right to change its Fees any time, upon notice to you if such change may affect your existing subscriptions. If you received a discount or other promotional offer, Wix shall have the right to automatically and without notice renew your subscription to such Wix Service(s) at the full applicable Fee.

Avitan Decl. Ex. C (Terms of Use) ¶ 5.1. Section 5.3, Subscription Auto-Renewals, similarly discloses that "[i]n order to ensure that [users] do not experience any interruption of loss of services," Wix will automatically renew subscriptions "*unless [the user] turn[s] off] the auto-renewal option*." *Id.* ¶ 5.3 (emphasis in original). Users who do not turn off the auto-renewal feature will "automatically renew upon the end of the applicable subscription period, for a renewal period equal in time to the original subscription period (excluding extended periods) and, unless otherwise notified to you, at the same price (subject to applicable Taxes changes and excluding any discount or other promotional offer provided for the first period)." *Id.* With respect to early charges and renewal notifications, the Terms of Use notes that Wix "will attempt to automatically charge you the applicable Fees using the Stored Card, within up-to two (2) weeks before such renewal period commences," and that for "yearly or multiple-year subscription period[s], Wix will endeavor to provide notice prior to the renewal . . . at least thirty (30) days in advance of the renewal date." *Id.*

Finally, Wix maintains that the Terms of Use "disclosed Wix's cancellation policy in section 6.1, Cancellation by User." Mot. at 7. That provision notes that users "may discontinue to use and request to cancel [their] User Account and/or Wix Services at any time, in accordance with the instructions available on the Wix Services." Terms of Use ¶ 6.1. Section 5.4 then goes on to explain how and when refunds would be issued:

United States District Court
Northern District of California

> If you are not satisfied with Wix Services that are subject to a Fee for a period of service or subscription commitment and which is your initial purchase of such service, you may provide notice of cancellation for any reason within fourteen (14) days of having first ordered or activated such Wix Services (the "Refund" and "Refund Period"). The Refund is applicable only to the initial purchase of Wix services which is an upgrading of a free website by purchasing a Premium Plan (as offered on the Wix Website). The Refund is not applicable to any additional purchases, upgrades, modification or renewals of Wix Services.

*Id.* ¶ 5.4.

Wix also argues that Mahallati did not paint the full picture with respect to his purchases. Wix attached to its motion a declaration from Lidor Zohar Avitan, Wix's Payment Expert, which describes Mahallati's payment history in detail. *See* Avitan Decl. ¶¶ 7–11. He notes that while the complaint alleges conduct up to December 2022, Mahallati maintained his subscription for three years after. *Id.* When Mahallati's second subscription term was set to begin on December 27, 2022, Mahallati "logged onto his Wix account and updated the expiration date for his credit card" on November 15, 2022. *Id.* ¶ 8. In December 2023, Mahallati's card declined Wix's subscription renewal, prompting Wix to email Mahallati to inform them about this issue; Mahallati then logged onto his account and updated his payment information. *Id.* ¶ 9. Nor did Mahallati cancel his subscription in December 2024, when his subscription renewed for a fourth time. *Id.* ¶ 10. Mahallati only canceled his subscription on December 9, 2025—three years after his purported discovery of the injury in this case. *Id.* ¶ 11. Further declarations from Yuval Boneh, Wix's Marketing Automation Team Lead, confirm that Mahallati was emailed thirty days before each renewal period noting the price increases. *See* Declaration of Yuval Boneh in Support of Wix's Motion to Dismiss ("Boneh Decl.") [Dkt. No. 32-5] ¶¶ 3–7.

Taken together, Wix argues that it "explicitly disclosed its terms to Plaintiff, with ample notice and time," which Mahallati consented to both affirmatively (through the Terms of Use) and implicitly (by letting his subscription to continuously renew). Mot. at 12. In its view, therefore, it would be "implausible [that Mahallati] could have purchased a service worth less than expected" to support an overpayment theory of injury. *Id.*

In response, Mahallati alleges that his injury is "the purchase itself: he bought a

subscription he would not have bought absent [Wix's] representation that he could cancel at any time." Oppo. at 2. He notes that Wix made a representation at sign-up that users could "disable auto-renewal or cancel [their] subscription at any time in [their] account settings," *see* Compl. ¶ 35, but Wix in reality "limits refunds to the first fourteen days after purchase," *id.* ¶ 36. Mahallati claims that "but for [Wix's] deceptive billing practices," he "would not have purchased or subscribed to said services." *Id.*; Compl. ¶ 6. In his view, these allegations suffice to establish an injury-in-fact under an overpayment theory, as he "paid more for a product that []he otherwise would have due to [Wix's] false representations about the product." *Id.* (quoting *McGee*, 982 F.3d at 706–07).

Here, Wix "disclosed" the "purported defect" at the time of purchase. *Kolar*, 2025 WL 1717279, at *4. The Terms of Use explicitly note its "right to change its Fees any time," *see* Terms of Use ¶ 5.1, and that Wix would attempt to charge his account for renewal "at least thirty (30) days in advance of the renewal date," *id.* ¶ 5.3. The complaint as pleaded does not sufficiently explain any "deceptive billing practices" that would provide a concrete injury sufficient for Article III standing purposes. *See* Compl. ¶¶ 3, 6. Accordingly, I will DISMISS Mahallati's overpayment theory for lack of standing with leave to amend.

### B. Cancellation Theory

Wix also asserts that Mahallati has not alleged an injury concrete enough to sustain his cancellation theory. Mot. at 12; *see TransUnion LLC*, 594 U.S. at 427. In its view, Mahallati's complaint does not allege that he "actually attempted to cancel his subscription and was denied a refund," *see id.*, and instead alleges at most a "hypothetical inability" to cancel without a refund. *Id.* (citing Compl. ¶ 37). Mahallati responds by arguing that Wix's own policies confirm that users are "only permitted to cancel with a refund within 14 days of the first time that a user makes a purchase," meaning that cancellation "only loses service already paid for." Oppo. at 2–3.

Like the overpayment theory, the Terms of Use clearly indicated to Mahallati that while users may "discontinue to use and request to cancel [their] User Account and/or any Wix Services at any time," Terms of Use ¶ 6.1, refunds would be "applicable only to the initial purchase of Wix Services . . . [and would not apply to] any additional purchases, upgrades, modification[s] or

renewals of Wix Services," *id.* ¶ 5.4. Considering these terms, Mahallati does not adequately plead an injury-in-fact sufficiently traceable to any harm by Wix to warrant Article III standing. I will dismiss Mahallati's cancellation theory as well for lack of standing with leave to amend.

## II. FAILURE TO STATE A CLAIM

The problems I have identified that demonstrate lack of standing mean that Mahallati's causes of action are deficient. I will point out that in addition to those concerns, it appears that the statute of limitations will have run on his FAL claim (which carries a three-year limitations period), *see Williams v. Apple*, 449 F. Supp. 3d 892, 912 (N.D. Cal. 2020) (citing Cal. Civ. Code § 338(a)), but not the UCL claim, which carries a four-year statute of limitations, *see* Cal. Bus. & Prof. Code § 17208. The clock started running on his claims on December 13, 2022, when he learned about the overpayment charge. He filed suit on February 5, 2026. His UCL claim also suffers from a failure to plead plausibly causation and the need for equitable relief. This paragraph is not intended to include an exhaustive list of pleading issues, but Mahallati will want to pay attention to them on amendment.

## CONCLUSION

For the reasons set forth above, Wix's motion to dismiss is GRANTED with leave to amend. Mahallati shall have twenty two (22) days from this Order to file an amended complaint.

**IT IS SO ORDERED.** Dated: October 19, 2026

William H. Orrick
United States District Judge

United States District Court
Northern District of California